SETH GAGE, *et al.*, Respondents, *vs.* ELIJAH GATES, Appellant.

1. *Bankruptcy, proceedings in—Dismissal of, effect of—Re-instatement—Bankruptcy act.*—After a dismissal of proceedings in involuntary bankruptcy, a re-instatement of the cause, without further notice or appearance, is absolutely void, and so are all proceedings thereunder. (U. S. Bankr. Act, §§ 39, 40.)

2. *Practice, civil—Agreed case—Special verdict—When will stand.*—In this State an agreed case stands in lieu of a special verdict, and all the facts necessary to a determination of the case must be definitely ascertained. If there be any ambiguity, any omission of facts necessary to a recovery, any lack of clearness and certainty on material points, the judgment will not be allowed to stand.

3. *Husband and wife—Personal property, separate estate in, how reached—Attachment—Equity.*—The separate estate of a wife in personal property cannot be reached by attachment proceedings, but only by appropriate proceedings in equity, and then only when she has created a charge on her separate estate binding thereon.

*Appeal from Buchanan Circuit Court.*

*A. H. Vories,* for Appellant.

*J. D. Strong,* for Respondents.

SHERWOOD, Judge, delivered the opinion of the court.

This cause was tried on an agreed statement of facts, resulting in a judgment for the plaintiffs, and the defendant, who is the sheriff of Buchanan county, has appealed.

The statement referred to is, in substance, this:

Frank T. Hall and Mary Hall, husband and wife, in the year 1872 resided in St. Joseph, Mo., the wife being engaged in the millinery business, and having a stock of goods suited to her vocation. Proceedings were instituted by certain creditors in the district court of the United States for the Western district of Missouri, with the view of having the wife declared and adjudged an involuntary bankrupt. The husband was no party to this procedure. Service of petition and order to show cause were duly had upon the wife; but before any adjudication of the matter was reached, the petitioning creditors dismissed their proceedings, and no seizure or posses-

Gage, et al. v. Gates.

sion of property by the United States Marshal occurred during their pendency, nor at any time.

After. these occurrences, the wife absconded from this State, leaving a large portion of the stock of millinery in the possession of her husband, who, in like manner, absconded, leaving the property in the possession of one Englehardt.

Thereupon, the plaintiffs commenced suits by attachment against the husband and wife, to recover certain sums of money. The ground of the attachment was non-residence, and publication was duly made as to both of the defendants.

The wife was subsequently dismissed as party defendant. By virtue of the writs of attachment issued in the several causes, the then sheriff of Buchanan county levied on and attached the stock of millinery, as well as other personal property. After the levy of these writs, the proceedings in bankruptcy were, without any further process, notice, or order to show cause, re-instated against the wife by order of the district court. This re-instatement of the cause in and by the district court occurred after the wife had absconded from the State, to which she has never returned. The defendant, Gates, is the successor in office of the former sheriff, Richardson, by whom the writs mentioned were levied and afterwards delivered to the present sheriff, together with the attached property. Special judgments were rendered against the husband, and against the property attached in all of the attachment suits. Subsequent to the rendition of these judgments, the wife was adjudged a bankrupt, without any notice, etc., as before stated.

Under special executions issued on the judgments mentioned, the defendant sold the property attached, and all the right, title and interest of the husband therein, realizing from such sale $1,016.69. The circuit court of Buchanan county then ordered the defendant to pay ratably to the attaching creditors the money arising from the sale referred to. The district court also made an order on the sheriff to show cause, why an order should not issue from that court, commanding him to pay to the assignee in bankruptcy of the wife the

proceeds of such sale arising from the stock of millinery; but which order was prior in point of time, is not stated. No order of restraint, injunction, or anything of that nature, was ever issued by the district court, or served on the defendant or the plaintiffs, nor did they have any notice or knowledge of the bankruptcy proceedings against Mrs. Hall before sale took place under the special executions. The sheriff made return to the order of the district court to show cause, etc., that of the proceeds of the sale of the attached property the sum of $661.84 was realized from the stock of millinery, which Mrs. Hall had, while living with her husband and doing business as milliner. Upon this return being made, the district court peremptorily ordered the sheriff to pay to the assignee of Mrs. Hall the sum obtained by selling the stock of millinery. This order was complied with, and the assignee thus became the recipient of the $661.84. The residue of the proceeds of the sale of the property was, it seems, paid by the sheriff in conformity with the order of the circuit court, though this is by no means clear. But as that court only rendered judgment for an amount equal to the sum realized from the sale of the stock of millinery, together with interest on that sum, amounting in the aggregate to $741.26, and as the sum of $661.84 is mentioned in the concluding portion of the agreed statement, as the amount in dispute, we may perhaps not unreasonably infer, that the sheriff did his duty so far as concerned the proceeds of the sale of the property not forming a portion of the millinery establishment.

This record is a very fair specimen of others which are daily presented for our consideration. It would not unnaturally be supposed, that, when attorneys deliberately sit down to draw up an agreed statement of facts, such statement would leave no room for doubt as to the meaning thereof. But that supposition shoots wide of the mark as in the case before us; for portions of this agreed statement (so called) are either contradictory, or else utterly unintelligible. For instance, we are told in relation to the order made by the circuit court for the sheriff to pay to the plaintiff the sums realized

from the attachment sales, that he has not "paid to said plaintiffs said sums of money, nor any part thereof." In another place, in reference to the peremptory order of the district court, requiring the sheriff to pay to the assignee the $661.84, we are gravely informed " that said Gates has paid said last mentioned sum to said Musser, pursuant to said sum to the aforesaid parties plaintiffs in said attachment suits." This is sheer nonsense. It may be, that the original statement was clear enough. If so, counsel have been greatly culpable in failing to see that a correct transcript was prepared. But even if the statement had been sufficiently definite as to points mentioned, there are other matters in connection therewith, which should have been made plain, but were altogether omitted. We shall refer to them hereafter, and, for the present, discuss those points which the agreed statement clearly presents.

## I.

That the district court acquired jurisdiction in the first instance by the service of its process is conceded, but it is also conceded that after such jurisdiction was obtained, that the proceedings in bankruptcy were voluntarily dismissed by the petitioning creditors. The only effect of this dismissal was to oust the jurisdiction of the district court. And it would seem to require no argument to demonstrate this ; for, if process and its service was necessary in one instance, it certainly was in another ; if it was requisite anterior to dismissal in order to empower the court to act, it was equally requisite after the occurrence of dismissal. Proceedings in bankruptcy are purely statutory, and hence, unless the statute be pursued, no validity can attach to the act done. Sections 39 and 40 of the bankrupt act define the steps necessary to be taken with great particularity. The first named section provides, that a person, "subject to the conditions hereinafter prescribed, shall be adjudged a bankrupt, on the petition," etc. And section 40, after prescribing those conditions as to service of copy of petition and order to show cause, etc., contains an express prohibitory clause against any " further proceedings

unless the debtor appear and consent thereto," until proof shall have been given to the satisfaction of the court of such service or publication." Section 14, of the same act, to which we have been referred, has no relevancy here, for that section, in providing that proceedings in bankruptcy shall operate as a dissolution of an attachment suit, " made within four months next preceding the commencement of said proceedings," evidently contemplates that such dissolution shall result only when other provisions of the act meet with compliance. These considerations induce the confident belief, that the act of re-instating the cause after its dismissal, and without further notice or appearance, was without authority of law, and that, consequently, any adjudication following such re-instatement was a mere usurpation, and absolutely void. It follows also, as an inevitable sequence, that the order directed to the sheriff, under which he paid the money to the assignee, can afford no protection to the officer who now invokes its aid.

## II.

It is by no means certain, however, notwithstanding the lack of jurisdiction in the district court, that the plaintiffs were entitled to a recovery with respect to the $661.84.

It is well settled in this State, that an agreed case occupies the same footing, and stands in lieu of a special verdict (Mumford vs. Wilson, 15 Mo., 540), and the court pronounces the conclusion of law precisely as if a jury had found a verdict in that form. Now, in order that the conclusion of law on the facts agreed, or the facts found, may be pronounced, all the facts necessary to a determination of the case must first be definitely ascertained. If there be any ambiguity, any omission of facts necessary to a recovery, any substantial lack of clearness and certainty on material points, the judgment cannot be allowed to stand. (Lecompte vs. Wash, 9 Mo., 547.) In the case at bar, the agreed statement filed does not inform us, whether the debts sued for were those of the husband, or of the wife; whether the latter had any separate estate, or interest in the stock of millinery; whether those debts were

evidenced by notes, nor whether, if evidenced by notes, those notes were signed by the husband or by the wife, or by both. It is obvious that, if the wife had a separate estate in the millinery establishment, that it was attachable neither for the debts of the husband, nor of the wife; and it is equally obvious that such separate estate could only be reached by appropriate procedure in equity for that purpose, and not then, unless the wife had created a charge on her separate estate by such action on her part as would accomplish that end.

We might, indeed, assume that the property attached was that of the husband, and that the debts were his; but this is no case for assumptions. We will not undertake to pronounce the law, until the facts, on which the legal conclusion must be based, are first definitely ascertained.

In order that this may be done, and the cause tried on its merits, we shall reverse the judgment and remand the cause. Judges Vories and Wagner absent. The other judges concur.