CITY OF WESTPORT *ex rel.* KITCHEN, *Collector*, v. McGEE, *Appellant.*

### Division One, April 12, 1895.

1. **Municipal Corporation:** EXTENSION OF LIMITS: TAXES. Lands brought into a city by the extension of its boundaries are not subject to a tax levy already made.

2. ———: CITY OF FOURTH CLASS: TAXATION: LIEN. A city of the fourth class must by ordinance establish the rate of taxes upon the basis of the county assessment, and no lien is created therefor until the taxes are levied and extended by the city council on the city tax book.

3. ———: ———: ———. The law pertaining to such cities does not require its taxes to be levied on any fixed date and the requirement that the mayor shall obtain a copy of the county assessment on the first day of May of each year is, as to such time, merely directory.

4. ———: ———: ———: INTEREST. The allowance of twelve per cent. interest on delinquent taxes due cities of the fourth class is legal. (R. S. 1889, secs. 1604, 7605.)

5. ———: ———: ———: EXEMPTION: CONSTITUTION. Revised Statutes, 1889, section 1580, exempting from taxation in cities of the fourth class agricultural lands exceeding five acres included within the city limits is violative of the constitution, article 10, section 3, providing that taxes "shall be uniform upon the same class of subjects and shall be levied and collected by general laws" and article 10, section 6, which exempts agricultural land when "used exclusively for agricultural or horticultural societies."

6. ———: ———: ———: ———. Although the exemption contained in the foregoing section is unconstitutional, the power of extending the city limits therein provided for is not so dependent on the exemption clause as to render the extension clause unconstitutional. (*Copeland v. City of St. Joseph*, 126 Mo. 417, *distinguished*).

7. Constitution: STATUTE: REPEAL BY IMPLICATION. An unconstitutional enactment will not by mere implication repeal a prior valid law.

*Appeal from Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

AFFIRMED.

*A. M. Allen* for appellant.

(1) The city could not levy a tax upon the property of defendant based on the assessment made on the first day of June, 1890, for the taxes of 1891. This would be taxing of property outside the city limits for the benefit of those inside of it, and would in effect be taking the property of the citizen for private use, and would be in violation of fundamental law. *Wells v. Weston*, 22 Mo. 384; *St. Charles v. Nolle*, 51 Mo. 122; *Corn v. Cameron*, 19 Mo. App. 573; *Ford v. Cameron*, 19 Mo. App. 467; Cooley on Taxation, 14, 121. (2) The time fixed by law at which the annual burden of taxation shall attach and become a lien fixes the liability of persons and property to taxation for that year; and no municipality can levy a tax upon property or persons not within its jurisdiction at that time. Cooley on Taxation, 258, 261; *McLaren v. Sheble*, 45 Mo. 130;

*Blossom v. VanCourt,* 34 Mo. 390; R. S. 1889, secs. 7552, 7569. (3) The assessment fixes the liability of the property to taxation on the first day of June of each year. Revised Statutes, 1889, sec. 7552. See Revised Statutes, 1889, secs. 1603, 1604. The city is required to procure from the county clerk on or before the first day of May of each year a certified abstract from his assessment books of all property within such city made taxable by law for state purposes, and the assessed value thereof as agreed upon by the board of equalization; upon the assessment so made and returned, the city makes its levy. Every step in the proceeding relates back to the day the law charged the property with the burden of the tax. R. S. 1889, sec. 7531; *Blossom v. VanCourt,* 34 Mo., *supra; McLaren v. Sheble, supra.* Property not within the jurisdiction of the taxing power on that day would be exempt from taxation as completely as if it was not in existence on that day. (4) There is no law authorizing cities of the fourth class to charge interest on taxes, and the allowance of twelve per cent. interest on the judgment is unauthorized. R. S. 1889, sec. 5974; *St. Louis to use of Seibert v. Allen,* 53 Mo. 44.

*C. O. Tichenor* and *R. J. Ingraham* for respondent.

(1) All laws exempting property from taxation, other than that mentioned in the constitution, section 6, article 10, are void. (2) Cities of the fourth class have power to levy and collect taxes upon real estate within their limits. R. S. 1889, sec. 1588. The land of appellant was within the limits of the city of Westport on the day the tax in controversy was levied. It, therefore, necessarily follows that the respondent, having the power to tax land within its limits, and the land of appellant being within its limits, the tax is valid,

unless the agreed statement of facts reveals that the manner or mode of the levy of the tax violated some jurisdictional or constitutional requirement of the law governing the question. *Cheaney v. Hooser*, 9 B. Mon. 330; *Benoist v. St. Louis*, 19 Mo. 179; Dillon on Municipal Corporations [4 Ed.], sec. 786; *Buffalo v. Le Contelix*, 15 N. Y. 453. (3) The statutory requirement that the assessment list should be obtained from the county clerk on May 1 of the current year is merely directory. (4) It is universally held that the time within which such an act is to be done is directory and not mandatory, and hence failure to strictly comply with it does not constitute a jurisdictional defect. *Thomas v. Chapin*, 116 Mo. 396; *State ex rel. v. Railroad*, 113 Mo. 297; Cooley on Tax, 280, *et seq.*; Black on Tax Titles, sec. 100; *The St. of Nev. v. The Western, etc.*, 4 Nev. 338; *Perrin v. Benson*, 49 Iowa, 325; *French v. Edward*, 13 Wall. 506. (5) Cities of the fourth class are by statute given a lien for the taxes they levy or "assess." But no time is fixed when such tax becomes a lien. This being so, the lien attaches when the amount or proportion of tax to which each parcel of real estate is subject is definitely fixed and determined and spread upon the tax roll. Black on Tax Titles, secs. 189, 120; Cooley on Tax [2 Ed.], 423–447; *Eaton v. Chesbrough*, 82 Mich. 214; *Webb v. Bidwell*, 15 Minn. 483; Bouv. L. Dict., Assess.; *Dungan's Appeal*, 88 Pa. St. 416. The lien for state and county taxes in Missouri attached June 1, 1889, the date of the assessment, and any tax based on such assessment, relates back to that date. This is so because the statute says so. Revised Statutes, 1889, sections 7552, 7569, 7531. Such statutes have no applicability to municipal taxes assessed under separate and distinct charters. *Eaton v. Chesbrough*, 82 Mich. 214; *Blossom v. VanCourt*, 34 Mo. *loc. cit.* 395.

GANTT, P. J.—This is an action to recover city taxes for the year 1891. The following facts were agreed upon at the trial in the circuit court:

*First.* On the twelfth day of May, 1891, the plaintiff enlarged its corporate territorial boundaries so as to include the lands of appellant upon which he resided, and until that day the property described in plaintiff's petition was without the limits of plaintiff.

*Second.* That the mayor of said city, the same being a city of the fourth class, procured from the county clerk of Jackson county, Missouri, a certified abstract from the assessment books of said county, dated May 12, 1891, and being taken from the assessment made June 1, 1889, of all the property in the new limits of said city as extended, made taxable by law for state purposes, said abstract showing the assessed value of all of said property as made by the assessor on the first day of June, 1889; that said abstract was, about the fifteenth day of May, 1891, transmitted to the board of aldermen of said city, and they, on the twentieth day of May, 1891, established the rate of taxation and declared the levy thereof, and the property in this suit was contained in said certified abstract.

*Third.* That the certified tax bill, sued on herein, is based on the certified abstract of the assessment books of said county and the levy of taxes made thereon by the board of aldermen of said city.

*Fourth.* That each tract of land, described in the certified tax bill herein, contains more than five acres, and the same has never been platted into lots or blocks; that said land is a part of the residence property of the defendant, and is used by him exclusively for pasturage, and agricultural, horticultural and gardening purposes.

*Fifth.* That, unless the matters herein set forth and admitted to be true, prevent a finding in behalf of the defendant, then the judgment in this cause must be for and in favor of plaintiff, for the amount set forth in the tax bill herein, with penalty thereon as provided by law.

Upon the submission of the foregoing statement of facts to the court, the defendant, by his attorney, moved the court to declare the law to be, that, upon the agreed statement of facts, the plaintiff can not recover, and the finding and judgment of the court ought to be for the defendant. Which declaration of law the court refused; to which refusal of the declaration thus prayed, the defendant, by his counsel, then and there excepted at the time.

The court found a verdict for the plaintiff in the sum of $175, with interest from the twentieth day of May, 1893, at the rate of twelve per cent. per annum, and for costs of this suit, and declared the same to be a lien upon the property described in the petition, to wit: south ten and seventy-seven hundredths acres of the east half of the northeast quarter of the northeast quarter, and the north thirteen and fifty hundredths acres of the east half of southeast quarter of northeast quarter, section 19, township 49, range 33.

I. Was the city authorized to levy a tax on defendant's land around which it first extended its boundaries on May 12, 1891?

Defendant's denial of this right is based upon the provisions of law which required all real estate in Jackson county to be assessed June 1, 1889. He assumes that, because the initial day of the assessment fixes the commencement of the lien for state and county taxes by virtue of the revenue law (secs. 7552, 7569, 7531, R. S. 1889; *Blossom v. VanCourt*, 34 Mo. *loc. cit.* 395), city taxes must also relate either to that date or June

1, 1890 (as assessments are made only once in two years) and that, as his land was not in the city at the time fixed for the attaching of the liability, and could not in 1888 or 1890 be charged with city taxes, any subsequent levy by the city upon the valuation fixed by the state and county assessment was without the sanction of law. But we think this is a misapprehension of the purpose and effect of the legislation on this subject.

To save expense and insure uniformity of valuation of city property for taxation, the legislature dispensed with a city assessor, and provided that the assessment for state and county should be the basis of municipal taxes, and, instead of an assessment by the city, simply required the mayor to obtain a certified copy of the county assessment on May 1, of each year. R. S. 1889, sec. 1603. A lien is given for municipal taxes, but there is nothing in the statute that justifies the claim that the lien for the city taxes relates to the date of the county assessment. On the contrary the city council must by ordinance establish the rate of taxes upon the county assessment, and there is no lien until the tax is levied and extended by the city council on its tax book. The question here is, were these lands within the corporate limits when the tax was levied. If they were, they are subject to city taxation. If lands are brought into the city after taxes have been levied upon the property of the city, the lands subsequently brought in are not subject to that levy. There is nothing in the law requiring the city to levy taxes on a certain day, nor will the fact that the mayor did not obtain the abstract until the twentieth day of May affect the validity of the tax. The time within which he should obtain the abstract was directory, not jurisdictional.

II. Appellant's point as to the rate of interest charged is not well taken. Section 7605, Revised

Statutes of Missouri, 1889, provides that, as to state and county taxes, any taxpayer who fails to pay his taxes on a fixed date is chargeable by the collector with a "penalty" (sometimes also called *"interest"*) of one per cent. per month. The statute calls this an "additional tax," or "penalty." Section 1604, Revised Statutes of Missouri, 1889, provides that the payment of all taxes in such cities shall be enforced by the collection in the same manner and under the same rules and *regulations*, as may be provided by law, for collecting and enforcing the payment of state and county taxes. The imposition of a penalty is a regulation for the collection of the tax and ordinarily the most effective.

III. So far we have treated this question on the assumption that the limits of Westport were lawfully extended so as to include defendant's property on which these taxes were levied, but the defense that these lands were exempt from taxation by virtue of section 1580, Revised Statutes, 1889, necessitates an examination into that question.

To the claim of exemption, plaintiff replies that said exemption is unconstitutional, and we so held in *Copeland v. St. Joseph*, 126 Mo. 417.

Section 1580, Revised Statutes, 1889, provides that "all agricultural or pastoral lands included within the corporate limits of such city shall be exempt from taxation for city purposes until they have, by recorded plats or sale, been reduced to tracts or lots of five acres or less."

Section 3, of article 10, of the constitution provides that "taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws." The authority which

levied this tax was the city of Westport. This real estate is in the same class with all other real estate in said city, and its owner is as much bound to bear his proportional part of the burden of supporting the government as any other proprietor of real estate in said city, so that, without any other provision, it would seem clear this property could not be exempted. But the framers of the organic law went further and specified in the sixth section of article 10 what property could be exempted by general laws, and in the seventh section ordained that "all laws exempting property from taxation, other than the property above enumerated (in section 6 of said article) shall be void."

Section 6, article 10, is in these words: "The property, real and personal, of the state, counties and other municipal corporations, and cemeteries, shall be exempt from taxation. Lots in incorporated cities or towns, or within one mile of the limits of any such city or town, to the extent of one acre, and lots one mile or more distant from such cities or towns, to the extent of five acres, with the buildings thereon, may be exempted from taxation, when the same are used exclusively for religious worship, for schools, or for purposes purely charitable; also, such property, real or personal, as may be used exclusively for agricultural or horticultural societies: *Provided*, that such exemptions shall be only by general law."

Now it is clear that section 1580 attempts to exempt all agricultural or pastoral lands in tracts over five acres, included within the corporate limits of such city, from taxation for city purposes, and not merely "agricultural lands" "used exclusively for agricultural or horticultural societies," and in so doing it violates the plain mandate of the constitution. *State ex rel. v. O'Brien*, 89 Mo. 631; *Kansas City v. Medical College*, 111 Mo. 141.

At this point we are confronted with our decision in *Copeland v. St. Joseph*, 126 Mo. 417, in which we held that the power to extend the limits of cities of the second class, under the act of March 30, 1887 (Laws 1887, p. 52), was so dependent upon the proviso therein that agricultural or horticultural lands in tracts over three acres should not be subject to municipal taxation, that the power to extend must fall with the unconstitutional exemption.

Section 5 of the act of 1887, which received that construction, was in these words: "The mayor and council shall have power by ordinance to extend its limits, specifying the new line or lines to which the limits shall be extended, and the limits of the city, including the territory brought in: *provided*, however, that no tract of land exceeding three acres in size, *so taken into the limits of any such city, shall be subject to municipal taxation* for any purpose whatever, so long as such tract of land shall remain undivided into tracts less than three acres in size, and shall be used for agricultural or horticultural purposes," etc.

In that case we pointed out the various statutes of the state which conferred this power of extending their limits on cities of all classes in this state unhampered by the proviso in section 5 of the act of 1887. As said there, no reason could be given why a city of one grade should be permitted to take in adjoining territory without restriction upon its power to tax, and others granted the right only on the condition of exempting farming lands so brought in, but so positive was the language and so express the *proviso* we felt bound to hold that such was the evident intention of the legislature.

Upon a review of that case we are still of the opinion we correctly construed that act. But it will be

noted that in that section the exemption from taxation of three acre tracts was applied only to such tracts "so taken into the limits of any such city," that is to say, by extending the limits, and said section was confined to the subject of extension of limits and exemption of the lands thus brought in. Now section 1580, Revised Statutes, 1889, treats of various subjects; provides for preserving the jurisdiction of any city organizing under it, retaining the boundaries of the several wards, and for the continuance of all laws in force prior to organization, etc., and then as an independent subject, it proceeds: "The mayor and board of aldermen of such city, whether the same shall have been incorporated before becoming a city of the fourth class or not, with the consent of the majority of the legal voters of such city, voting at an election therefor, shall have power to extend the corporate limits thereof over any territory lying adjacent thereto, or may, by the same vote, reduce the territory of such city to exclude land used for farming purposes."

It will be observed that no condition is annexed, and no proviso added, by which its powers over any territory thus annexed is curtailed. In this respect it differs radically and substantially from the act of 1887. But immediately following this provision is another which exempts, *not the lands included in the extension only*, but "all tracts of agricultural or pastoral lands included within the corporate limits of the city," which exceed five acres in area. Standing thus, the two provisions are distinct, one relating to extension, the other to exemption from taxation without reference to extension.

The history of this section may aid us in coming to a proper construction. In 1877, when cities of the fourth class were first defined and when the constitution of 1775 was yet new, the power to extend the

limits of such cities was in no way made dependent upon this exemption. Laws of 1877, p. 175, sec. 2. In 1879, in the general revision, the exemption was added in these words, "all agricultural or pastoral lands included *in such extension* to be exempt from taxation until they had been reduced to five acres . or less." In the revision of 1889, the section was amended so that the exemption did not refer to those lands included in the extension only, but all such within the corporate limits. R. S. 1889, sec. 1580. In 1891 the exemption was stricken out entirely. Laws of 1891, pp. 61, 62.

Can it be said, in view of this history of this provision, that the legislature would have denied these cities the power to extend their limits, unless the unconstitutional provision had been inserted in the act? Nothing short of the most positive language should lead us to such a conclusion. We do not think this general exemption indicates an intention to deny the right of extension, but was simply an attempt of the legislature to exempt such property generally, because we must go further than merely to hold that the power to extend the limits was dependent upon the exemption, because, as it now appears, we must hold that the legislature would have denied the power of incorporation altogether where such tracts were included in the city limits, and this in the face of the unconstitutionality of the exemption, and the fact that all other cities were permitted to extend their limits without such a provision. Our conclusion is that the exemption is unconstitutional, and that the power of extension in this charter was not so dependent upon it that the ordinance incorporating defendant's lands within the city should be held void.

Moreover, even if the power to extend should be held dependent on the exemption from taxation, as both the revision of 1879 and 1889 were void, because uncon-

stitutional, the act of 1877 which contained the charter of cities of the fourth class was a continuing law and remain unrepealed by these subsequent unconstitutional amendments.    The revised act in 1879 only repealed "all acts and parts of acts inconsistent with this act," and, as was said in *Copeland v. St. Joseph, supra,* did not have the effect of repealing the act of 1877; and the law of 1889 only purports to be a revision and contains no repealing clause whatever.

While it is the recognized rule that a subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, will operate as a repeal, that rule is predicated upon the presumption that such revision is itself a valid law. The rule seems equally well settled that an unconstitutional enactment would not repeal a former valid law *by mere implication,* whatever effect might be given a positive repealing enactment of that character.    *Tims v. State,* 26 Ala. 165;    *Childs v. Shower,* 18 Iowa, 261. The judgment is affirmed.    BURGESS and SHERWOOD, JJ., concur.