City of Stanberry v. Jordan.

---

CITY OF STANBERRY v. JORDAN *et al.*, *Appellants*.

Division One, July 6, 1898.

1. **Appellate Jurisdiction:** TAXATION: REVENUE LAWS. The Supreme Court has appellate jurisdiction in a case where the assessment of taxes by a city of the fourth class is opposed on the ground that the levy, under the revenue laws, exceeds the maximum rate permitted by the Constitution.

2. **Taxation:** ASSESSMENT OF BANKS: AMENDATORY STATUTE OF 1891. The assessment of taxes due from an incorporated bank, must be made against the owners of the stock, and not against the corporation. But the assessment of the property of a private bank must be against the owners of the bank, and may be made in the business name adopted by the copartnership, and this mode of assessment was not changed by the act of April 1, 1891.

3. ———— : ASSESSMENTS AGAINST PRIVATE BANKERS: BY NAME OF BANK. An assessment against private bankers made in the name by which their bank is known and under which they do business, will be upheld.

4. ———— : MAXIMUM RATES FOR CITY PURPOSES.  A tax of fifty cents on the hundred dollars valuation for general revenue, and an additional tax of twenty-five cents on the hundred dollars for "sinking fund and interest," may be properly levied by a city of the fourth class, if the debt thereby sought to be paid was made for any of the purposes and in the ways mentioned in section 12 of article X of the Constitution.

5. ———— : SUIT AGAINST COLLECTOR.  In a suit by a city against its tax collector and his bondsmen, for his failure to enforce the payment of a certain tax, it must be both pleaded and proved that the proper tax book or legal warrant was delivered to him.

6. Practice : AGREED STATEMENT OF FACTS.  Where a case is submitted to the trial court upon an agreed statement of facts, that statement stands in lieu of a special verdict, and the court pronounces its conclusions upon such agreed facts precisely as if a jury had found a verdict in that form.  And if there is any ambiguity, any omission of facts necessary to a recovery, any lack of clearness or certainty on material points, the judgment can not stand, but may be reversed, or reversed and remanded.

*Appeal from   Gentry   Circuit   Court.*—HON. CYRUS A. ANTHONY, Judge.

REVERSED AND REMANDED.

*McCullough,   Peery & Lyons* for appellants.

(1)   The petition does not allege that the defendant Jordan ever had in his hands or that there was ever delivered to him, any properly certified and authenticated tax book, or any other legal warrant or authority to collect said tax.   Unless such process was put into his hands by the proper authorities, he could not lawfully have collected the tax, nor could his sureties be held liable for his failure so to do.   He must have a process before he can be held guilty of a breach of official duty in not executing it. Mechem on Officers, secs. 689 to 694; R. S. 1889, secs. 7576, 7598, 7599, 7602, 1603, 1604 and 1607; *Warrensburg v. Miller*, 77 Mo. 56; *Railroad v. Apperson*, 97 Mo. 300; *Brown v. Harris*, 52 Mo. 306; 25 Am. and Eng. Ency. of Law, pp. 292 to

297; *State v. Thomas*, 17 Mo. 506. (2) The petition alleges that the tax was assessed and carried out on the city books against the "Bank of Stanberry." This was a void and illegal assessment. Sess. Acts 1891, p. 195; *Springfield v. Bank*, 87 Mo. 441; *Lionberger v. Rowse*, 43 Mo. 67; *Bank v. Meredith*, 44 Mo. 500; *State ex rel. v. Catron*, 118 Mo. 280. (3) Under the act of 1891 there is no distinction between a private and an incorporated bank, and hence the assessment was void. If void, the collector could not be required to collect it. Cooley on Taxation, pp. 500, 501; *Weimer v. Bunburg*, 30 Mich. 201; *State to use v. Shacklett*, 37 Mo. 380; *Railroad v. Shacklett*, 30 Mo. 550; *Warrensburg v. Miller*, 77 Mo. 56; *Brown v. Harris*, 52 Mo. 306; Mechem on Officers, secs. 689 *et seq.* (5) Such defects in the petition are not cured by verdict. *Bank v. Franklin Co.*, 65 Mo. 105; *Inhabitants v. Williams*, 53 Mo. 141; *Frazer v. Roberts*, 32 Mo. 457; *Jones v. Fuller*, 38 Mo. 363; *Wells v. Mut. Ben. Ass'n*, 126 Mo. 639. (6) An agreed statement of facts must contain, without any ambiguity, omission or uncertainty, all the facts necessary to a recovery. If there be any ambiguity, any omission of facts necessary to a recovery, or any substantial lack of clearness and certainty on material points, no judgment can be rendered on it. And the burden is on the party seeking to recover to show his right of recovery from the facts as stipulated. *Gage v. Gates*, 62 Mo. 412; *Moore v. Henry*, 18 Mo. App. 35; *Ford v. Cameron*, 19 Mo. App. 457; *Appleman v. Am. Sport. Goods Co.*, 64 Mo. App. 71; *Carr v. Coal Co.*, 96 Mo. 149; *Smith v. Railroad*, 47 Mo. App. 546; *Land Co. v. Combs*, 53 Mo. App. 298; *Land Co. v. Hays*, 105 Mo. 143; *Hughes v. Moore*, 17 Mo. App. 148; *Robidoux v. Casselige*, 81 Mo. 459; *Burress v. Park. Imp. Co.*, 55 Mo. App. 381; *Field v. Railroad*, 21 Mo. App. 600.

*Aleshire & Benson* for respondent.

(1)   The petition is not defective, as it sets out *in haec verba* the condition of the bond, which is also filed with the petition as an exhibit.   Measured by the standard laid down in State ex rel. v. *Williams,* 77 Mo. 467, cited by appellant, the petition is good.   *State ex rel. v. Pace,* 34 Mo. App. 458.   (2)   Revised Statutes of 1889, sections 7576, 7598 and 7602, cited by appellant, have no connection with collectors of cities of the fourth class, and sections 1603, 1604 and 1607 are absolutely silent and wanting as to appellant's contention, and the law nowhere requires the same exactness of city clerks and boards of aldermen as it does of county courts and county clerks.   The practice of collecting the taxes which relates to the sale and seizure of the property is governed by the same rule as with county collectors.   No warrant or authenticated tax books is mentioned as being a prerequisite for the collector in cities of the fourth class, and no such defense was made in the lower court.   An inspection of the last paragraph in the agreed statement of facts shows conclusively that appellant's only defense to plaintiff's action was that a valid assessment could not be made against the Bank of Stanberry, and if it was valid it could not collect the taxes due from the Bank of Stanberry by seizure upon the personal property of said bank or its former owner.   (3)   There was levied against the Bank of Stanberry the tax in question, and if there was no such institution, appellant should not have waived that by agreement; but the agreed statement says that A. L. Tomblin was the cashier, and listed the property of the bank, and that admits the ownership.   We think the case of *State ex rel. v. Bank of Neosho,* 120 Mo. 161, covers every phase of this case. (4)   There is no ambiguity or uncertainty in the

agreed statement, and we contend that appellant by the agreed statement has admitted all of the necessary ingredients to make himself liable for the neglect of duty, as alleged in the petition. (5) The collector was the officer of the city, and all the presumptions must be indulged in that he was equipped with all of the authority given to collectors. (6) It is claimed that the statement is silent as to the class the city of Stanberry belongs. The petition alleges it to be a city of the fourth class, and it is not denied under oath, and we assume that that will dispose of that objection. While plaintiffs are only seeking to collect a five mill levy, it is true the entire levy was legal and should lawfully be collected. (7) No vote of the people in a city of the fourth class was required to levy the additional tax for interest and sinking fund, but the appellant has confounded the law which provides for the vote of the people to make contracts. *Lamar Waterworks v. Lamar*, 128 Mo. 188.

WILLIAMS, J.—Defendant Jordan, in the year 1893, was collector of the city of Stanberry. The other defendants are the sureties on his official bond. This suit is for an alleged breach of duty upon his part, in failing to collect certain taxes levied by the city for said year upon the "Bank of Stanberry," amounting to $67.19.

The petition alleges that plaintiff is a city of the fourth class; that defendant Jordan was elected collector thereof, on the fifth of April, 1892, for a term of two years; that he duly qualified and defendants executed the bond sued on, dated May 9, 1892, conditioned for the faithful performance of his official duties; that there was levied, by the board of aldermen of said city, a tax of $67.19 for the year 1893 against the "Bank of Stanberry;" that defendant Jordan, as collector, failed, refused and neglected to collect the

same, and that the city was damaged to the amount of said tax. The answer admitted the execution of the bond but denied the other allegations.

The case was submitted to the court upon an agreed statement of facts. This agreement admitted:

*First.* The election and qualification of Jordan as collector, and the execution by defendants of the bond sued on.

*Second.* That there was assessed for the year 1893 against the "Bank of Stanberry" a city tax of $100.78; that this was under an ordinance of said city providing for a levy, for said year, of five mills on the dollar for the "general revenue fund," and two and one half mills on the dollar for the "interest and sinking fund;" that plaintiff was only seeking to recover the tax for the "general revenue fund," and that, if the finding was in its favor, the judgment should be for $67.19, the amount due that fund.

*Third.* "It is further agreed that the property of the Bank of Stanberry for the taxes of 1893 was listed and given in to the assessor in the name of the Bank of Stanberry and sworn to by A. L. Tomblin, who was cashier of said bank at that time, and that the county clerk in furnishing the mayor of Stanberry a certified copy of the assessment for the year 1893, certified this assessment as 'Bank of Stanberry, A. L. Tomblin and Ed. Sayer, proprietors;' but that the city clerk of Stanberry in extending the taxes for the year 1893, extended the same on the collector's tax book 'Bank of Stanberry' only, being followed with the valuation and total amount of taxes."

*Fourth.* It is further agreed that the taxes in question became delinquent October 1, 1893, and that, from that date until February 1, 1894, the "Bank of Stanberry" had sufficient property out of which the same could have been collected.

*Fifth.* That the levy of two and one half mills on the dollar for "interest and sinking fund" was questioned, but defendant collected the same from numerous taxpayers and paid it to the city treasurer.

*Sixth.* That the owner of said bank had become a non-resident and at the time of the suit owned no property out of which the taxes could be made, "and plaintiff contends that the defendant is liable on his bond for failure to collect such taxes, and defendant contends that a valid assessment could not be made against the 'Bank of Stanberry,' and if the same was valid he could not collect the taxes due from said 'Bank of Stanberry' by seizing upon the personal property of said bank or its former owner, hence he is not liable on his bond."

Plaintiff recovered in the lower court. Defendants appealed and ask a reversal upon several grounds, which will now be considered.

1. The assessment is challenged. It is claimed that it was improperly made against the "Bank of Stanberry." This requires the examination and construction of the act of April 1, 1891 (Sess. Acts 1891, p. 195), amending the statute concerning the "assessment and collection of the revenue." It is further urged here and was in the lower court that the levy exceeds the constitutional limits. This court has appellate jurisdiction in cases where the construction of the Constitution or of the revenue laws is involved. Hence it is, that this appeal is properly before us.

2. The statute provides for the assessment of *the shares of stock* in an *incorporated* bank, and not of the bank itself. These shares must be assessed to the owner thereof. While the officers of the bank are required to deliver a list of the shareholders to the assessor, and the number of shares held by each, yet it is the owner of the stock who is to be assessed, and

not the corporation (*City of Springfield v. Bank*, 87 Mo. 441; *State ex rel. v. Catron*, 118 Mo. 280).

It is not stated definitely in the agreed facts, whether the "Bank of Stanberry" is a corporation, or, whether *that* was merely the *name* adopted by a co-partnership of individuals for a private bank conducted by them. The statement mentions two parties as the "proprietors" of the bank, and in other places refers to the "owner" thereof. It seems probable that it was not incorporated. In *State ex rel. v. Bank of Neosho*, 120 Mo. *loc. cit.* 169, SHERWOOD, J., said: "Section 922, to which reference has been made, in mentioning the requirements for engaging in private banking, requires that a statement be made and verified before a notary public, setting forth, *first*, the names of all persons inter-ested in the business and the amount of the capital stock invested, and, *second*, '*the name in which the business is to be conducted.*' The evident object of the latter clause was to afford a name, not only in which the business is to be conducted, but also one against which assessments could be made and taxes collected."

*Patchin v. Ritter*, 27 Barb. 34, involved the validity of a tax levied against "The Pratt Bank." An indi-vidual was doing business under that name. The court said "But it is argued, 'the assessment and warrant were not against the plaintiff, nor against any natural or artificial person, and were void for that reason.' The warrant upon its face was against the 'Pratt Bank' *eo nomine* and not against the plaintiff by name." The court answered the objection thus: "If the individual banker has adopted and published to the world a busi-ness name, as such banker, by which he describes and designates his banking business and office; in which he makes the reports required by law; . . . . . . by which, in short, he is universally known and recognized as a banker, why may not that name be used in assessing

him as such banker, as well as his individual name, with an affix to designate his business."

This court, in the *Neosho Bank* case, referred to above, upheld an assessment against private bankers made in the name by which their bank was known, and under which they were doing business. This simply gave recognition to a familiar principle. The partnership had adopted a name, and the members of it could not escape liability because others accepted that as a proper designation of the firm.

Appellants seek to distinguish this case and say that *State ex rel. v. Bank of Neosho, supra,* was based upon the provisions for assessing bank stock and private bankers contained in section 7538 of the statutes of 1889. It is claimed that the amendment of 1891 (Acts of 1891, p. 195) makes a material change in that matter.

The statutes of 1889, after providing for the assessment of manufacturing and other corporations and the shares of stock in incorporated banks, contain this requirement: "Private bankers, brokers, money brokers and exchange dealers, shall in like manner make return of all moneys or values of any description invested in or used in their business, *which shall be taxed as other personal property.*" The act of 1891 directs, that the property of manufacturing companies and certain other corporations shall be assessed and taxed as that of individuals. It then requires the assessment of *the shares of stock* in banks incorporated under the laws of the United States and of this State. The cashier or other proper officer must furnish to the assessor a list of such shares of stock and the names of the persons who hold the same together with the face value thereof. He is also required to include in his statement all reserve funds, undivided profits and other values belonging to the corporation. The taxable value of the real estate

of the bank is to be deducted from the total valuation. A basis is thus formed for the assessment of the shares. The section then proceeds: "Private bankers, brokers, money brokers, and exchange dealers shall make like returns and be assessed thereon *as hereinbefore provided.*" Appellants contend that the words "as hereinbefore provided" render it necessary to assess *private bankers* and brokers in conformity with the prior provisions of the section concerning *incorporated* banks. Hence, it is argued that an assessment against the "Bank of Stanberry" is invalid, whether it is an incorporated company or a private bank, and the claim is put forth that because of the change in phraseology in the act of 1891 above noted, the decision in the *Neosho* case is inapplicable.

The act of 1891 certainly does not require the *shares of stock* in a private unincorporated bank to be assessed for the very plain reason, that there are no such shares of stock to be taxed. The cashier or other officer can not give a list to the assessor of all *shares of stock* held therein and the names of the persons who hold the same, with the face value thereof, for a like reason; nor can the assessment be made against the stockholders personally, when there are no such shareholders. The first part of the section directs the property of manufacturing companies to be assessed as that of individuals. This is the only manner of making assessments provided in the section that can apply to private bankers. The method of fixing the value of the bank's property is the same whether it is incorporated or not. Both the form for the assessment of manufacturing companies, and the rule for arriving at the value of the property of banks, are fixed by that part of the statute prior to the declaration that private bankers shall be assessed "as hereinbefore provided." We do not think that any change was made by the act of 1891 in the party to

whom the property should be assessed. That act in this particular is the same as the statutes of 1889. If "Bank of Stanberry" was the business name adopted by a co-partnership of private bankers, the assessment was valid. *State ex rel. v. Bank of Neosho*, 120 Mo. 161.

III. The claim is made that the rate of taxation exceeded constitutional limits. This is based upon the fact that a levy of fifty cents on each one hundred dollars valuation was made for the "general revenue fund;" and in addition thereto, twenty five cents on the hundred dollars valuation for "interest, and sinking fund." Such a levy could very properly be made without any violation of the Constitution. The limit of fifty cents on a valuation of one hundred dollars does not apply to taxes to pay valid indebtedness existing at the date of the adoption of the Constitution or bonds issued in renewal thereof. A city also may, upon proper vote, incur a debt not exceeding the amount fixed by section 12 of article X of the Constitution and a tax may be levied to pay the interest thereon and to create a sinking fund to meet the principal when it matures. *Lamar Waterworks v. Lamar*, 128 Mo. 188. We can not say, upon the facts before us, that the city exceeded its authority in fixing the rate to be levied. Nothing is shown except that said rate exceeded fifty cents on the hundred dollars valuation and that the excess was for the "sinking fund and interest."

IV. Plaintiff's case rests upon the failure and neglect of the collector to enforce the payment of this tax. Plaintiff therefore should be held to allege and prove facts showing that the duty devolved upon him to make such collection. In the absence of the delivery to him of the proper tax book or legal warrant for his action the officer would be under no obligation to take any steps in the matter and would be a trespasser if he should attempt to do so. "Before the officer who

is designated by law for the duty of collecting the taxes can lawfully proceed to do so, he must have his warrant for the purpose, in due form of law. This, in different States may be the assessment roll or list with the tax extended upon it or it may be a duplicate of the list with like extension. . . . . . . Whatever the statute provides for in this regard, the collector must have and he is a trespasser if he proceeds to compulsory action without it." Cooley on Taxation [2 Ed.] 424. *War-rensburg v. Miller*, 77 Mo. 56. There is no allegation in the petition that the city ever placed in the hands of the collector or that he ever had in his possession any tax book, or process of any kind authorizing him to require payment of this tax. There is nothing whatever in the agreed statement of facts directly upon that subject. It does not anywhere affirmatively appear that proper authority was ever given him to compel payment. The most that can be said is that this might probably be inferred from other statements. Proof of this fact forms an important part of plaintiff's case, and it should not be left by the agreed statements to conjecture.

V.    This case was submitted to the court upon an agreed statement of facts which stands in lieu of a special verdict and the court pronounces its conclusions upon such agreed facts, precisely as if a jury had found a verdict in that form. "Hence, if there be any ambiguity, any omission of facts necessary to a recovery, any lack of clearness and certainty on material points, the judgment can not be allowed to stand." *Carr v. The Lewis Coal Co.*, 96 Mo. *loc. cit.* 155; *Gage v. Gates*, 62 Mo. 412; *Ozark Plateau Land Co. v. Hays*, 105 Mo. 143. It was said in the last mentioned case: "If the original finding were in favor of plaintiff, upon a statement of facts insufficient to sustain that result, this court might properly reverse, and, if thought just, remand the cause

for a new trial by virtue of express statutory authority to that effect (R. S. 1889, sec. 2304), as was done, for instance, in *Gage v. Gates* (1876) 62 Mo. 412." We think that is the proper disposition to be made of this case. It is accordingly reversed and remanded. All concur.