ALBERT P. LONG ET AL., Appellants, v. CITY OF INDEPENDENCE, a Municipal Corporation, Respondent, No. 41667—229 S. W. (2d) 686.

Division One, May 8, 1950.

*Louis W. Krings* and *Keith Martin* for appellants.

*Clay C. Rogers, William E. Tipton* and *John F. Thice* for respondent.

LOZIER, C.—Plaintiffs below appealed from a judgment dismissing their petition for the reason that it failed to state facts sufficient to constitute a cause of action and to state facts entitling them to the relief prayed for.

As the city taxes in issue were general taxes for public governmental purposes, construction of the revenue laws is involved and the appeal is properly here. Art. V, Sec. 3, 1945 Cons.; Pearson Drainage Dist. v. Erhardt (Mo. Sup.), 196 S. W. 2d 855; State ex rel. Lane v. Corneli, 347 Mo. 932, 149 S. W. 2d 815; State ex rel.

Divine v. Collier, 301 Mo. 72, ■ 256 S. W. 455; K. C. Exp. Driv. Park v. Kansas City, 174 Mo. 425, 74 S. W. 979; and City of Stanberry v. Jordan, 145 Mo. 371, 46 S. W. 1093. Appellants suggest that the appeal is also properly here "because respondent is a political subdivision of the state." While any city in the state is a political subdivision within the meaning of the taxation article of the 1945 constitution (Art. X, Sec. 15), no city *as such* is a political subdivision within the meaning of the section relating to the jurisdiction of this court (Art. V, Sec. 3). See 21 C. J. S. 666, 667, and Missouri cases cited.

The petition alleged that plaintiffs were the owners of certain real estate; that on February 2, 1948, the boundaries of defendant were "purportedly" extended to include plaintiffs' land whereby the land was "purportedly" included within defendant's corporate limits; that defendant "assessed, demanded and is now attempting to collect from plaintiffs" city real and personal property taxes for the 1948 calendar year; that under Secs. 10970 and 10942.3, Mo. R. S. A., all persons owning real or tangible personal property on January 1 were "liable thereon during the same calendar year; that plaintiffs' property was so assessed on January 1, 1948"; that, as plaintiffs' property was not within the corporate limits on such date, the taxes were void; that the taxes were void because "inequitable, not uniform and are an illegal attempt to require plaintiffs to pay for city services when they were not a part of, or residents of or owned property within said corporate limits"; that prior to and on January 1, 1948, plaintiffs were residents of a fire district and sewer district and "as such, have been assessed and are legally liable to pay for such fire prevention and sewer facilities"; that the districts were not, prior to February 2, 1948, within the corporate limits of defendant; that after such date parts of the districts were within such corporate limits; that the defendant asserted that the city taxes demanded entitled plaintiffs to fire protection and sewer facilities; that, if required to pay these city taxes, plaintiffs would be paying double taxes for the services; that defendant "denied plaintiffs the right to vote on city affairs until long after the purported annexation, the exact date being known to the defendant and unknown to plaintiffs, and that because of such fact, plaintiffs' constitutional rights" had been violated. Plaintiffs prayed for a decree holding the city taxes void and restraining their collection.

Appellants' statement of facts is: "The City of Independence is a municipal corporation in Missouri and it was, prior to February 2, 1948, a city of the fourth class. On February 2, 1948, the boundaries of the defendant were extended so as to bring the plaintiffs' property within the city limits and to make it a third class city. Prior thereto plaintiffs had not been within the corporate limits of the defendant. The defendant is now attempting to collect real and personal prop-

erty taxes for the entire calendar year of 1948. The plaintiffs were, prior to the annexation and subsequent thereto, residents of the fire district number one and sewer district number one, and they are legally liable for special tax assessments for fire and sewer facilities. The fire and sewer districts are within the annexed area. Although the area was annexed on February 2, 1948, the plaintiffs were denied the right to vote on city affairs until long after that date. The assessment date in Missouri for real and tangible personal property as fixed by statute is January first of each year. The plaintiffs are appealing from the order of the circuit court sustaining the defendant's motion to dismiss.''

██ Appellants' sole point is: ''Because the plaintiffs were not within the corporate limits of the defendant on January 1, 1948, the assessment date, the defendant cannot collect taxes from them for the year 1948.'' They contend that the date of assessment of city taxes is fixed by law as of January 1; that the value, situs and ownership of the property taxable is determinable as of that date; and that, there being no valid assessment, the taxes were void.

Respondent, a city of the third class, derives its taxing power from Sec. 6987, both R. S. Mo. 1939 and Mo. R. S. A. [Hereinafter, unless otherwise indicated, all statute references are to Mo. R. S. A.] This ██ section provides that such a city ''shall have full power and authority * * * to levy and collect taxes * * * on all property within the limits of such city, taxable according to the laws of this state.'' Appellants' theory is based upon the assumption that January 1, the statutory lien-attaching date, is also ''the assessment date'' and, as such, finally determines liability for all city taxes assessed and levied during the calendar year; and that liability for city taxes during that year depends upon the situs of the property on that date. If appellants are correct, the city had no power to assess, levy and collect 1948 taxes upon any property, including appellants', not within its corporate limits on January 1, 1948.

Sec. 10970 provides: ''Real estate shall be assessed at the assessment which shall commence on the first day of January, 1946, and shall be required to be assessed every year thereafter.'' The section deals with two matters: The ''official assessments'' (the final results of one of the procedures in the taxation process), and that particular procedure itself (the assembling of the data upon which the official assessments are based). See Cooley on Taxation, 4th Ed., Vol. III, Sec. 1044. The General Assembly has enacted many laws outlining the entire taxing process, and prescribing the powers and duties of various officials and boards of the state, county, city and other subdivisions, relative to the assessment, levy and collection of taxes. Chap. 79, Mo. R. S. A. The result of this process, which commences January 1 and is not completed until months later, is the ''official assessment'' as to each individual person or property unit.

While this official assessment is not made *on* January 1, it is *as of* that date so far as assessment of state and county taxes is concerned. See Secs. 10942.3, 10942.8, 11000.16, 11000.25 and 11000.38. This is true also as to city taxes upon property within the city on January 1. But we are not persuaded that the city's official assessments are solely *as to* property in the city on January 1. To so limit such assessments to such property is to ignore other statutes which most strongly indicate that the city does have the authority to tax property in areas annexed between January 1 and the completion of the official (and final) assessment books upon which the city's levy is made.

We have already quoted from Sec. 6987, authorizing cities of the third class to levy and collect taxes on property "within the limits" of such city. No statute provides when such a city's assessments must commence or end. Sec. 6925 requires them to be made by the city assessor jointly with the county assessor, who makes his assessments between January 1 and June 1 (Sec. 11000.9). The city's annual levy is made after the assessor's books "are returned," i. e., after the board of equalization has acted. (Secs. 6925 and 6929.)

In other statutes we find additional grounds for holding that a city such as respondent has power to collect taxes for the current year upon property in areas annexed after January 1. The political and fiscal year of such city begins in April (Secs. 6867, 6929); the fiscal year of the state is July 1—June 30 (Art. IV, Sec. 23, 1945 Cons.), and of the county is January 1—December 31 (Sec. 13908.1). The tax liens are the same (Secs. 11206 and 11207) and the taxes of all become delinquent at the same time, January 1 (Secs. 11108 and 6926). Considered together, all of these statutes evince a legislative intent that a city of the third class may levy and collect taxes during a calendar year on all property within an annexed area, provided the official assessment of such taxes is accomplished in the same manner as assessment of similar taxes upon property within the city limits on January 1.

This construction accords with the general principles announced and followed in the cases cited by appellant. Ex parte Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 416; State ex rel. Emerson v. City of Mound City, 335 Mo. 702, 73 S. W. 2d 1017; and State ex rel. City of Blue Springs v. McWilliams, 335 Mo. 816, 74 S. W. 2d 363. (They appear to follow what Professor Cooley calls the "better rule" of construction of tax statutes. Cooley on Taxation, 4th Ed., Vol. II, Secs. 501-509. See also Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. 2d 826.)

 Sec. 10942.3 provides: "Every person owning or holding real property or tangible personal property on the first day of January * * * shall be liable for taxes thereon during the same calendar year." Here the date is used, not as an assessment date, but as a date for fixing "liability for taxes," in amounts thereafter

to be determined. Appellants here seek (and some courts have been so inclined) to endow the lien-attaching date with powers which it does not possess. The lien for state and county taxes is inchoate and becomes "fixed in amount by relation back to that date after the assessment and levy was completed." St. Louis Provident Assn. v. Gruner, 355 Mo. 1030, 199 S. W. 2d 409. The same is true as to the lien for city taxes. City of Westport v. McGee, 128 Mo. 152, 30 S. W. 523. But *when* a tax lien *might* attach has no bearing whatever upon any issue as to whether or not it *did* attach. Neither authority to tax nor the proper exercise of that authority depends upon the date fixed for the "encumbrance" of the previously created tentative lien. Each of these matters must be determined without considering the lien-attaching date and, in fact, even as if there were no statute providing for a lien. We do not feel that the General Assembly (by providing for the lien and by specifying its attaching date) intended that the provisions of Secs. 6987, 6925 and 6929 should not be applicable to property in areas annexed after January 1.

We restate the issue here as it was stated in the City of Westport case: "The question here is, were these lands within the corporate limits when the tax was levied? If they were, they are subject to city taxation." Appellants' personal property likewise was taxable by the city if they were residents of the city when the tax was levied. See State ex rel. Waite v. Boatmen's Nat. Bk. of St. Louis, 351 Mo. 1234, 175 S. W. 2d 795.

In City of Westport v. McGee, supra, the city, which had extended its boundaries on May 12, levied the taxes on May 20 upon the basis of the county's assessments. Sustaining the taxes, we said of the taxpayer's contention (identical with appellants' here): "'He assumes that, because the initial day of the assessment fixes the commencement of the lien for state and county taxes, * * * city taxes must also relate * * * to that date * * * and that, as his land was not in the city at the time fixed for the attaching of the liability and could not [on such date] be charged with city taxes, any subsequent levy by the city upon the valuation fixed by the state and county assessment was without the sanction of law. But we think this is a misapprehension of the purpose and effect of the legislation on this subject.'"

While there is a square conflict of authority as to liability, of property in areas annexed by cities, for taxes for the current year (62 C. J. S. 192), we believe that we stated the proper rule in the City of Westport case. The court there did not refer to the earlier cases of Ford v. City of Cameron, 19 Mo. App. 467, and Corn v. City of Cameron, 19 Mo. App. 573 (cited by appellants here), which announced a contrary rule. As these cases were called to the court's

attention there, we consider them overruled by the decision in the City of Westport case.

In Coll. of Revenue v. Ford Motor Co. (C. C. A. Mo.), 158 Fed. 2d 354, cited by appellants, the validity of the *state* tax was not in issue and the question was one of its apportionability between vendor and vendee. The court held the lien did not attach until the levy is made and the amount is finally determined. However, we have since ruled otherwise. St. Louis Provident Assn. v. Gruner, supra. Other cases cited by appellant (Reynolds v. City of Asheville, 199 N. C. 212, 154 S. E. 85, and City of Gulfport v. Todd, 92 Miss. 428, 46 So. 541) follow a rule contrary to that announced in the City of Westport case. Detroit Trust Co. v. City of Detroit, 248 Mich. 612, 227 N. W. 715, does not sustain appellants' position as in that case the annexation was after the completion of the assessment rolls.

And the fact that appellants would pay "double taxes" for fire protection and sewer facilities does not affect the validity of the city taxes here involved. Barnes v. ▉ Kansas City, 359 Mo. 519, 222 S. W. 2d 756.

We rule that the trial court did not err in dismissing the petition and that the judgment should be, and it hereby is, affirmed. *Van Osdol* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by Lozier, C., is adopted as the opinion of the court. All the judges concur.