Dear Mr. Schwartze:
This opinion is in response to your question asking:
 "Whether or not an ambulance district formed pursuant to the provisions of Sections 190.005-190.085
V.A.M.S. which gained voter approval on August 8, 1978 and which will elect directors on November 7, 1978 can impose and collect the tax authorized by said sections in the calendar year 1978 taking into account the provisions of 67.110(1) V.A.M.S. providing that each political sub-division in the state shall fix its ad valorem property tax rates as provided in this section not later that September 20, for entry in the tax books."
You also state that:
 "By petition following the guide lines in Sections 190.005-190.085 V.A.M.S. the question as to whether or not to form an ambulance district to be known as the Maries-Osage County Ambulance District was submitted to the voters in said district on August 8, 1978. The questions as to whether or not to form an ambulance district gained voter approval on that date.
 "The ambulance service in this area is and has been provided by a Vienna Ambulance Service, Inc. A not-for-profit corporation which was operating on the membership dues of its members plus the service charges which were levied upon people provided service for. This mode of operation has ran into extreme difficulty in regard to funds.
 "Due to the provisions of 190.005-190.085
and the fact that a special election would again cost a considerable amount of money, it was decided that the directors of this new district be elected concurrent with the November 7th, General Election. Pursuant to law, these directors must set the tax rate to be imposed by the political sub-division, the ambulance district, not to exceed the annual rate of fifteen cents on the hundred dollar assessed valuation."
Section 67.110, RSMo Supp. 1976 provides:
 "1. Each political subdivision in the state, except counties, shall fix its ad valorem property tax rates as provided in this section not later than September twentieth, for entry in the tax books. Before the governing body of each political subdivision of the state, except counties, as defined in section 70.120, RSMo, fixes its rate of taxation, its budget officer shall present to its governing body the following information for each tax rate to be levied: The assessed valuation by category of real, total personal and other tangible property in the political subdivision as entered in the tax book for the fiscal year for which the tax is to be levied, as provided by subsection 3 of section 137.245, RSMo, the assessed valuation by category of real, total personal and other tangible property in the political subdivisions for the preceding taxable year, the amount of revenue required to be provided from the property tax as set forth in the annual budget adopted as provided by this chapter, and the tax rate proposed to be set.
 "2. The governing body shall hold at least one public hearing on the proposed rates of taxes at which citizens may be heard prior to their approval. The governing body shall determine the time and place for such hearing. A notice stating the hour, date and place of the hearing shall be published in at least one newspaper qualified under the laws of the state of Missouri of general circulation in the county within which all or the largest portion of the political subdivision is situated, or such notice shall be posted in at least three public places within the political subdivision. Provided, however, in any county of the first class having a charter form of government, said notice may be published in a newspaper of general circulation within the political subdivision even though such newspaper is not qualified under the laws of Missouri for other legal notices. Such notice shall be published or posted at least seven days prior to the date of the hearing. The notice shall include the assessed valuation by category of real, total personal and other tangible property in the political subdivision for the fiscal year for which the tax is to be levied as provided by subsection 3 of section 137.245, RSMo, the assessed valuation by category of real, total personal and other tangible property in the political subdivision for the preceding taxable year, for each rate to be levied the amount of revenue required to be provided from the property tax as set forth in the annual budget adopted as provided by this chapter, and the tax rates proposed to be set for the various purposes of taxation. The tax rates shall be calculated to produce substantially the same revenues as required in the annual budget adopted as provided by this chapter. Following the hearing the governing body of each political subdivision shall fix the rates of taxes, the same to be entered in the tax book. Failure of any taxpayer to appear at said hearing shall not prevent the taxpayer from pursuit of any other legal remedy otherwise available to the taxpayer. Nothing in this section absolves political subdivisions of responsibilities under section 137.073, RSMo, nor to adjust tax rates in event changes in assessed valuation occur that would alter the tax rate calculations. The provisions of this subsection shall not apply to a political subdivision that does not have the services of a paid administrative officer, clerk or secretary.
 "3. Each political subdivision of the state shall fix its property tax rates in the manner provided herein for each fiscal year which begins after December 31, 1976."
Under Section 70.120, RSMo, "political subdivision" means any agency or unit of this state which now is, or hereafter shall be, authorized to levy taxes or empowered to cause taxes to be levied.
The first question that arises is whether it is proper for the ambulance district to tax property within the district for a full year, although the district did not exist as a political entity for the entire year. In Long v. City of Independence, 229 S.W.2d 686
(Mo. 1950), the Supreme Court of Missouri held that a city could apply property taxes to annexed property for a full year even though the property was annexed to the city after the year had begun. That situation was analogous to the one presented here. We believe that a newly created political entity has the same right to tax its property for a full year (in the year of its creation) as an existing entity which gains new property during a year. This is true even though the assessment for that year's tax is to be based on the value of the property as of January 1.
While there are varying rules of statutory construction stated respecting the question of whether statutory provisions are mandatory or directory, Section 1.020 nt. 9, V.A.M.S., it is our view that the rules expressed in State ex inf. Atty. Gen. ex rel. Lincoln etal. v. Bird et al., 244 S.W. 938 (Mo. 1922) and Mead v. Jasper County,18 S.W.2d 464 (Mo. 1929) are applicable to the question whether it is mandatory that under Section 67.110 political subdivisions must fix property tax rates not later than September 20 of each year. That is, where the statute merely requires that a certain thing be done and nowhere prescribes the result that follows if such a thing is not done the statute is directory unless the nature of the act or the designation of the time must be considered as a limitation of the officer's power. In our view the provision quoted was not intended by the legislature to be a limitation on the power of the political subdivision to levy such taxes. Clearly the legislature has not provided that such a result will follow.
We are therefore of the view that the provision in question is merely directory and not mandatory and, as a consequence, a levy for 1978 may be made by such a body after September 20, 1978.
CONCLUSION
It is the opinion of this office that the provision of Section67.110, RSMo Supp. 1976, which requires certain political subdivisions to fix ad valorem property taxes not later than September 20th of each year for entry in the tax books is directory and not mandatory. Therefore, an ambulance district organized in 1978 and which elects directors November 7, 1978, can levy taxes for the year 1978.
The foregoing opinion which I hereby approve was prepared by my assistant, John C. Klaffenbach.
Very truly yours,
 JOHN ASHCROFT Attorney General