CITY OF GULFPORT *v.* WILLIAM A. TODD.

[46 South., 541.]

MUNICIPALITIES. *Extension of limits. Taxation.*

A municipality extending its limits after the first day of February of any year cannot impose the taxes of that year on property brought within its boundaries by the extension.

FROM the chancery court of Harrison county.
HON. THADDEUS A. WOOD, Chancellor.

Todd, appellee, was complainant in the court below; the city of Gulfport, appellant, was defendant there. From a decree

favorable to complainant the defendant appealed to the supreme court.

The city of Gulfport, a municipal corporation operating under the chapter on municipalities of the Code 1892 (sections 2911–3039), and being in existence before the 1st day of February, 1906, on March 9, 1906, passed proper ordinances preliminary to extending its corporate limits. On April 12, 1906, the final ordinance extending the corporate limits was passed and became operative. Later during the year 1906, at the time and in the manner provided by law, the municipality made its annual assessment for taxes on all lands then within the corporate limits, and fixed a levy thereon for municipal purposes. Complainant, appellee, was the owner of certain land brought into the corporate limits by the extension on April 12, 1906. Taxes for the year 1906 were levied on complainant's land; he refused to pay them and filed a bill for an injunction to restrain the municipal tax collector. The defendant demurred to the bill and moved to dissolve the injunction, but the court below overruled both, and, defendant declining to answer or plead further, a final decree was rendered making the injunction perpetual. Appellee contended that his property was not liable for taxation to the city for the fiscal year 1906, because it was not within the city limits on the 1st day of February, and, further, because the city had no right to collect taxes attempted to be collected from him, for the reason that the assessment was not equal and uniform, as required by the constitution of the state, since certain railroads and other public service corporations (assessed by the state railroad commission) were not required to pay taxes to the municipality on property brought into the corporate limits by said ordinance of April 12th.

Code 1892, § 3748, provides as follows: "All taxable property brought into the state or acquired or held by any person before the 1st day of February shall be assessed, and taxes thereon paid for the current year." Code 1892, § 3771, provides that "lands shall be assessed between the 1st day of

Febraury and the 1st day of July." Code 1892, § 2926, gives the municipality the right to "levy and collect taxes upon all the real, mixed and personal property within the corporate limits, taxable according to the laws of the state, the valuation of such property to be taken from the assessment rolls of the county." Code 1892, § 3018, provides that "the municipal assessment of property for taxation shall be made by the clerk or tax collector, by copying from the county assessment rolls that portion thereof which embraces property or persons within the corporate limits; the copy may be made at any time after the assessment rolls are approved." Code 1892, § 3020, provides that: "The mayor and board of aldermen shall levy the municipal taxes at the regular meeting in September of each year, or, in case of failure so to do, at any other regular meeting thereafter."

*John L. Heiss* and *McWillie & Thompson,* for appellant.

In March, 1906, Code 1892, § 2912a, gave, and now Code 1906, § 3301, gives, the city ample power to enlarge its boundaries and extend its territorial limits by proceeding in the manner designated in the statute. That the city had the power of enlarging its limits cannot be disputed or denied, and the existence of this power was not without effect upon the contiguous territory which was subject at any time to be taken into the city; and there was no legal wrong to it, or surprise upon its inhabitants when the power was exercised.

It will be well to bear in mind that under our statutes all state, county and municipal obligations are payable, and theoretically at least are paid in cash; that the taxes of 1906, levied in September of said year or afterwards and collected between the first of October, 1906, and March following, would almost necessarily be applied to municipal expenditures made after their collection; and this is to a very great extent, if not wholly, true. It follows that territory brought within municipal limits in April gets all the benefits of the taxes of the current year, to

the same extent as if brought into the limits in January or during any preceding year.

When the territory was taken into the city the municipality at once assumed all of the obligations of a municipal corporation in respect to it; the city at once came under duty to maintain its roads or streets, including bridges, to furnish water and lights to its inhabitants and to discharge other municipal obligations; there was no postponement of these duties until a future day when persons residing and property situate in the annexed territory should begin to pay municipal taxes.

In this case the city of Gulfport passed the ordinance, March 9, 1906, proposing to extend its corporate limits, and on April 12, 1906, the ordinance bringing into the city the lands now in controversy became operative, having been duly published and no appeal having been prosecuted therefrom.

The city up to and after April 12th, 1906, as before, had full power, Code 1892, §§ 2925, 2926, "*to levy and collect taxes upon all the real, mixed and personal property within the corporate limits, taxable according to the laws of the state, the valuation of such property to be taken from the assessment rolls of the county.*"

On this statute we propound two inquiries:

First.    When shall it tax?

Of course the section of the code from which the quotation is taken must be construed along with the other statutory provisions on the subject, and turning to Code 1892, § 3018, we find that "The municipal assessment of property for taxation shall be made by the clerk or tax collector, by copying from the county assessment rolls that portion thereof within the corporate limits; the copy may be made at any time after the assessment rolls are approved."

The county assessment rolls are approved (Code 1892, § 3788) on the first Monday of August and the assessment therefore for city taxes is to be made after the first Monday of August.

The levy is to be made at the first regular meeting of the mayor and board of aldermen (Code 1892, § 3020), in September.

The city has power to tax in August and September, to assess in August and to levy the tax in September or afterwards. It had this power in 1906.

Second. What property is to be assessed for municipal taxes and upon what property is the municipal levy to be laid?

The statute itself answers both phases of the inquiry. Under Code 1892, §§ 3018, 3788, the municipal assessments are to be made after the first Monday in August and the property to be assessed is that then *"within the corporate limits."* At what date? Why of course when the power is exercised, and we have seen that it is to be exercised in August so far as concerns the assessment of the property, in September or afterwards so far as concerns the levy of the taxes, and the collecting of course is to be done still later.

The following propositions are predicated of statutory provisions:

A. The assessment is to be made in August and is to be of all taxable property (then) within the corporate limits.

B. The levy is to be made in September or afterwards, and is to be laid upon the assessed property; of course embracing all taxable property (then) "within the corporate limits."

C. The taxes are to be collected later on, after being so levied upon all property within the corporate limits in September.

Can exceptions be engrafted on these statutory provisions; can they be construed away for the benefit of the appellee?

The court below and appellee's counsel put too much stress on that part of Code 1892, § 2746, which reads thus "and all taxes assessed shall be a lien upon and bind the property assessed from the first day of February of the year in which the assessments shall be made," etc.

This has nothing to do, in our judgment, with the case at bar; we are entirely willing for the taxes, the collection of which is

enjoined, to be treated as having been a lien on the property from the first day of February, 1906, *but collection is not dependent thereon.* It is not more difficult to conceive of the coming into existence of a lien on property subject to be brought into the city limits than upon property already within such limits; and the retroactive effect of a levy of taxes made in November, upon an assessment made in August, carrying it by relation back to February is no more shocking when applied to property brought into the city in April than in its application to that brought within corporate limits in January.

There seems to be an idea abroad, at least there are evidences of record showing its manifestation in the court below, that the statute fixing the lien of taxes from February the first and Code 1892, § 3748, providing that taxable property brought into the state or acquired or held by any person before the first day of February shall be assessed and taxes thereon paid for the current year, carve out exceptions to the statute directing municipal assessments and tax levies to be made in August and September and to be on all property then within municipal limits. Such is not the case. The power to tax, the jurisdiction, is not as of any previous special date, such as the first of February, fixed arbitrarily as the date from which the tax lien is to be operative; but the power to tax, the jurisdiction, is as of the time when it is to be exercised. If the property be then within the city the municipal authorities have jurisdiction of it, and having exercised jurisdiction by causing it to be assessed and levying taxes on it, the collection cannot be rightfully enjoined.

Think of these two supposable cases: Jackson extended its limits January 31st, Gulfport, February 2nd, the same year. Jackson according to appellee could rightfully collect taxes of the current year, but Gulfport would be denied the right, because it was two days late in getting its ordinance operative. This would be to give too much stress to the mere matter of a date. Can the inference drawn from the supposed cases be dissipated and its force destroyed by supposing another case,

that Vicksburg extended her limits on December 30th and the imposition on property brought within the city limits so late in the year of taxes for that year? We answer, this could not be; after the assessment, made in August, and the levy, made in September, territory brought within municipal limits during that year could not be taxed until the next.

If the county of Harrison made its levy of taxes at the time fixed by law in 1906 and levied, as no doubt it did, a special school tax on property not within the towns and cities in the county, the territory annexed to Gulfport in April, 1906 would not have been liable to that special school tax. *Jackson* v. *Second, etc., in Saulsbury,* 5 Gray. (Mass.), 413. Should the county of Harrison undertake to enforce its collection against lands annexed to Gulfport, its argument would be just as strong as the one made in this case by the appellee. The court will see that the argument would be this, the lien for taxes relates back to the first of February and the property in question on the first of February was not within the limits of the city of Gulfport and therefore it is liable to this special country school tax, although the property was in Gulfport when assessed and when the tax was levied.

We have been able to find but one case exactly in point. In Kentucky property on the first of January was taxable, the lien of taxes began then, and that day stood in that state's revenue system as the first of February now stands in ours. The limits of the city of Newport were extended on February 16, 1867, and the municipal taxes for that year were levied in May following, and the question arose whether the territory annexed after the first of January and before the levy of the taxes, was subject to the tax. The supreme court of Kentucky decided that it was liable. *Swift* v. *Newport,* 7 Bush (Ky.), 37.

We have in our own state a case presenting facts somewhat the converse of those now before the court, *Deason* v. *Dixon,* 54 Miss., 585. In that case after the levy of the taxes and before the time fixed for tax sales the limits of Brookhaven were con-

tracted; but the tax collector was about to make sale of the land which had been excised from the municipality. The sale was enjoined, this court holding that while there was a lien on the property and no escape from liability, the city tax collector had simply been deprived of the power to make the tax sale since the land was no longer within municipal limits. The same doctrine is announced in *Waldron* v. *Lee,* 5 Pick. (Mass.), 323.

A Nevada case is of interest. In that state a tax on the proceeds of mines was to be collected quarterly. A new county, White Pine County, was created on April first, and the tax on the proceeds of the mines within its borders for the first quarter of the year not having been levied, the question arose whether the new county could levy and collect the tax. The supreme court of that state held that the new county could do so, and it is clearly inferable from the decision that the situation of property at the time of the levy of taxes determines its jurisdiction for taxation. *White Pine County* v. *Ash,* 5 Nev., 279.

The sections of the code—Code 1892, §§ 3746, 3748, Code 1906, §§ 4255, 4257, upon which appellee's counsel rely, were never intended to be used as a shield for the protection of delinquent taxpayers; the object in view in the enactment of each was rather to place a sword in the hands of the taxing power with which to exact just contributions from those who willingly receive all the benefits of government but unwillingly contribute to its support. It would be a perversion of these statutes to make them the instrumentality of defeating the collection of a tax.

Code 1892, § 3746, the first of the sections, makes taxes assessed a lien upon property from the first day of February. Cannot a debt unsecured by any lien be collected? It is no defense to a debt to show that it is unsecured, in whole or in part. A tax is a debt. Code 1892, § 3747. The absence of a lien is not determinative of the right to collect a tax or any other debt. In this case, where the lien, if existent, is made operative before

the levy of the tax, it can make no difference, so far as the right to collect the tax is concerned, that the property was without municipal limits at the remotest date to which the lien could be referred if it were within the limits when the levy was made. If the lien in passing back by relation and before reaching the statutory limit of time encounter something which obstructs its passage, it and its relation nevertheless are good up to the obstruction.

Code 1892, § 3748, the other of the sections, is to the effect that taxable property brought into the state or acquired or held by any person before the first day of February shall be assessed and taxes thereon paid for the current year. Aside from the main reason why this statute does not aid appellee, the property in controversy was not brought into the state within the meaning of the statute; it was where now located before the state came into existence; there is nothing to show when appellee acquired it. The section has no relation to municipal limits. But this statute is not applicable for the manifest reason that it fixes liability to taxes and does not declare non-liability. An affirmative legislative declaration that certain property shall be assessed and taxed does not exempt other property from taxation, in the absence of all negative words.

See the following authorities: 25 Am. & Eng. Ency. of Law (2d ed.), 620; *Mt. Pleasant* v. *Beckwith,* 100 U. S., 530, 25 L. Ed., 699; *Broughton* v. *Pensacola* 98 U. S., 266, 23 L. Ed., 896; 1 Abbott on Municipalities, 23, 680; *Barnes* v. *District of Columbia,* 91 U. S., 540, 23 L. Ed., 440; *Daly* v. *Swope,* 47 Miss., 379; *Beckwith* v. *Bean,* 98 U. S., 266, 23 L. Ed., 896; 1 Abbott on Municipalities, 678; *Id.,* par. 311; 27 Am. & Eng. Ency. of Law (2d ed.), 630, 897; *Westport* v. *McGee,* 128 Mo., 153, 30 S. W., 523; *Martin* v. *Dix,* 52 Miss., 53, 24 Am. Rep., 661; 1 Cooley on Taxation, p. 3, note 4; *Thomas* v. *Gay,* 169 U. S., 264, 18 Sup. Ct., 340, 42 L. Ed. 740; 25 Am. & Eng. Ency. of Law (1st ed.), 131; 27 Am. & Eng. Ency. of Law (2d ed.), 618; *Hawkins* v. *Carroll,* 50 Miss., 735.

*Barrett & Taylor,* for appellee, cited *Jackson* v. *Newman,* 59 *Miss.,* 385, 42 Am. Rep., 367; *Pitts* v. *Vicksburg,* 72 Miss., 181, 16 South., 418; *Adams* v. *Ducate,* 86 Miss., 276, 38 South., 497; *Vicksburg Waterworks Co.* v. *Vicksburg Water Supply Co.,* 86 Miss., 68, 38 South., 302; *Crittenden* v. *Booneville,* 92 Miss., 277, 45 South., 724; 20 Am. & Eng. Enc. of Law (2d ed.), p. 1140; *Leonard* v. *Canton,* 35 Miss., 189; *Adams* v. *Bank,* 75 Miss., 701, 23 South., 395; *Id.,* 78 Miss., 532, 29 South., 402; *Vicksburg* v. *Worrell,* 67 Miss., 47, 7 South., 219; 27 Am. & Eng. Enc. Law (2d ed.), p. 662; *Wildberger* v. *Shaw,* 84 Miss., 442, 36. South., 539; *Austin* v. *Butler* (Tex. Civ. App.) 40 S. W., 340; *Deason* v. *Dixon,* 54 Miss., 585; *McHenry Baptist Church* v. *McNeal,* 86 Miss., 22, 38 South., 195; *Jennings* v. *Coahoma County,* 79 Miss., 525, 31 South., 107.

Argued orally by *Jno. L. Heiss* and *R. H. Thompson,* for appellant and by *Thos. H. Barrett,* for appellee.

CALHOON, J., delivered the opinion of the court.

The appellee, Todd, filed his bill for injunction, which injunction is sustained and made perpetual by the final decree of the court below. The purport of the bill is that the city of Gulfport enlarged its city limits, the ordinance of enlargement being of date April 12, 1906, after the proper preliminary steps. By this enlargement the real estate of appellant was taken into the corporate limits of the city, precedently to which time it had been in Harrison county, and not in the city. On the 1st day of February, previous to the time that this land was taken into the corporate limits, it was subject to the law of the state, and to assessment under that law by Harrison county.

This is not a case of merger of two corporations. It is a case where the effort is to tax for general revenue purposes land which was not in the city on the 1st day of February. There is no question of governmental agency here, but simply the question of the power of a subordinate creation of the state to

tax for its general revenue purposes, without reference to the day fixed by the laws of the state. We are construing here our own statute, and we do not think it is within the power of a municipality by enlargement of boundary to change the day fixed by the legislature, to-wit, February 1st. Property brought into the state after the 1st day of February is not taxed for that year, and it is not to be tolerated that a municipality may do what the state does not do. We do not think any authority can be found which in a precisely similar case holds otherwise. If so, we decline to follow it. The assiduity of counsel on either side has produced in the briefs all cases that could be found, and we will not undertake to add to those produced for the appellee in the brief of his counsel.

*Affirmed.*