HENRY F. SHAFFNER v. MORRIS LIPINSKY, S. W. LIPINSKY, LOUIS LIPINSKY, CLARA LIPINSKY THORNER, AND HER HUSBAND, ROBERT THORNER, AND COMMERCE UNION TRUST COMPANY, MORRIS LIPINSKY, S'. W. LIPINSKY, AND LOUIS LIPINSKY, THE LAST FOUR TRUSTEES OF AND UNDER THE LAST WILL AND TESTAMENT OF S. LIPINSKY, DECEASED.

(Filed 10 June, 1927.)

**1. Taxation—Statutes—Calendar Year—Fiscal Year—Liens.**

By express provisions of our statute, C. S., 3949 (3), the month, in its relation to the time taxes on real estate shall be due by the owner of lands, means the calendar month as distinguished from the lunar month, and applies to the fiscal year.

**2. Taxation Statutes—Interpretation—In Pari Materia—Vendor and Pur· chaser—Deeds and Conveyances—By Whom Taxes Are Chargeable.**

Chapter 101, Laws 1925, making the lien for taxes to attach 1 May, the Machinery Act, ch. 102, art. 3, sec. 44, requiring that the taxpayer shall return all real and ˙personal property to the list-taker, owned by him 1 May, and sec. 59 (3), applying these provisions to cities and towns, and sec. 88, requiring the sheriff to account to the county treasurer, etc., are *Held* to be *in pari materia* with C. S., 3949 (3), and that in the sale of real property during the fiscal year the vendor is chargeable as against his vendee for the State, county, and city taxes accruing up to 1 May, following the date of his conveyance; and the vendor with those due for the remainder of the fiscal year ending 30 April.

1—194

APPEAL by plaintiff from *Shaw, J.,* at May Term, 1927, of BUNCOMBE. Affirmed.

This is a controversy without action. The agreed case is as follows:

"1. That the defendants, being the owners of the land and premises in the city of Asheville, Buncombe County, North Carolina, upon which is located the Drhumor Building, did, on ...... December, 1926, execute a written option to convey to the plaintiff said land and premises, for the consideration and upon the terms therein stated, which said contract or option, among other things, provided that 'The said parties of the first part agree and bind themselves, their heirs, executors and administrators, upon the exercise of this option within said time and the payment to them of the purchase price for said land and premises, as hereinbefore specified, to execute, acknowledge and deliver to the said party of the second part, or his assigns, a good and sufficient deed, with the usual covenants of seizin and warranty, conveying said land and premises, with all the appurtenances thereunto belonging, unto the said party of the second part, or his heirs or assigns, in fee simple, freed from all liens and encumbrances, except, and it is understood and agreed between the parties hereto, that the said land and premises shall be conveyed subject to the aforesaid mortgage or deed in trust to the New York Life Insurance Company, the rights of Annie L. Weaver to one-half of the west wall of the building on said land, and all existing leases held by tenants of the parties of the first part now occupying said premises; taxes on said land and premises shall be prorated between the parties hereto to the date of the exercise of this option.'

"2. That the plaintiff in due time exercised said option, and said land and premises were conveyed to the plaintiff by the defendants by deed dated 15 December, 1926.

"3. That at the time said contract or option was given, all taxes on said land and premises had theretofore been paid by the defendants, except the taxes which had been levied and assessed against said land and premises during the year 1926, by the city of Asheville and by the county of Buncombe, which taxes amounted to $5,481.25.

"4. That at the time said deed of conveyance was delivered to the plaintiff, the defendants contended and insisted that the tax year begins on 1 June of each year, and that, therefore, under the terms of said contract of sale or option, they, the defendants, were liable only for the taxes for 6½ months, covering the period from 1 June, 1926, to 15 December, 1926, and that the plaintiff was liable for the taxes for 5½ months, covering the period from 15 December, 1926, to 1 June, 1927.

"5. The plaintiff contended and insisted that the tax year begins either on 1 May or 1 January of each year, and not on 1 June, and that under the terms of said contract of sale or option he was liable for a propor-

tionate part of said taxes only for 4½ months, covering the period from 15 December, 1926, to 1 May, 1927; or for only a period of one-half month, from 15 December, 1926, to 1 January, 1927.

"6. In order that this difference of contention might not hinder or delay the closing of the transaction, and in order to prevent expensive litigation, it was agreed by and between the parties that the plaintiff should pay $2,512.18 of the taxes levied and assessed against said land and premises during the year 1926 by the city of Asheville and the county of Buncombe, said payment to be for the period of 5½ months beginning 15 December, 1926, and ending 1 June, 1927, as contended for and insisted upon by the defendants; and that thereafter all the parties would submit the matter on case agreed to the court for a decision as to when the tax year began for the taxes levied during 1926 by the city of Asheville and by the county of Buncombe; and that if it should be found that the said tax year began on 1 June, as contended by the defendants, plaintiff should not be entitled to recover anything from the defendants; and that if it should be found that said tax year began on 1 January, 1926, then the plaintiff would have been liable for taxes for only 15 days, from 15 December, 1926, to 1 January, 1927, and would be entitled to recover of the defendants $2,283.40; and if it should be found that the said tax year began on 1 May, 1926, then the plaintiff would have been liable for taxes for a period of 4½ months, from 15 December, 1926, to 1 May, 1927, and would be entitled to recover of the defendants $456.77.

"7. That the plaintiff, in accordance with said understanding and agreement, did pay $2,512.18 of said taxes levied against said land and premises during the year 1926 by the city of Asheville and by the county of Buncombe.

"8. That the plaintiff is entitled to recover of the defendants the sum of $2,283.40 if said tax year for said taxes began 1 January, 1926.

"9. That the plaintiff is entitled to recover of the defendants the sum of $456.77 if said tax year for said taxes began 1 May, 1926.

"10. That the plaintiff is not entitled to recover anything from the defendants if the tax year for said taxes began 1 June, 1926.

"11. That the court costs of this case agreed shall be shared equally by plaintiff and defendants."

The judgment rendered by the court below is as follows: "This cause coming on to be heard on an agreed case and affidavits submitted therewith, and the court being of the opinion and holding as a matter of law that the tax year for the property taxes levied by the county of Buncombe and the city of Asheville, during 1926, began on 1 May, 1926, and ended on 30 April, 1927. It is therefore ordered, adjudged, and decreed

that the plaintiff have and recover of the defendants $456.77, and that the cost be shared equally by plaintiff and defendants, as agreed."

Plaintiff excepted to the judgment, assigned error, and appealed to the Supreme Court.

*Bourne, Parker & Jones for plaintiff.*
*Merrimon, Adams & Adams for defendants.*

CLARKSON, J. C. S., 3949 (3), is as follows: " 'Month' and 'year.' The word 'month' shall be construed to mean a calendar month, unless otherwise expressed; and the word 'year,' a calendar year, unless otherwise expressed; and the word 'year' alone shall be equivalent to the expression 'year of our Lord.' "

The case of *Rives v. Guthrie,* 46 N. C., p. 84, was an action of slander. The question involved in that case was whether a statute which makes use of the word "months" meant a lunar or calendar month. The statute under construction provided that the action must be brought in six months. The same as the present statute, C. S., 444. At p. 85: " 'Month (in Saxon, Monath) is from Mona, the moon. In popular language, four weeks, or 28 days, are called a month, which consists of one revolution of the moon, or the period from one change or conjunction of the moon with the sun, to another'—Webster's Dictionary. The calendar or almanac month, consisting of 28, 29, 30, and 31 days, is an arbitrary or artificial division of time, made to correspond with the 12 signs of the Zodiac."

*Nash, C. J.,* speaking to the subject in the *Rives case, supra,* at p. 86, said: "In deciding the question, our attention is naturally drawn to the history of the division of time into years, months, and weeks. The latter is of Divine institution, being the time employed by the Creator of all things, in the creation of the world, and marked by Him, by a command, to keep holy the seventh. The other two divisions are of man's invention. It was early discovered that they were necessary; observation pointed out that the apparent course of the sun around the earth occupied a period of a little more than three hundred and sixty-five days. The changes of the moon, which were observed to occur every twenty-eight days, naturally suggested the division of months. . . . The Julius Cæsar system continued until 1582, when Gregory XIII introduced what is called the new style, and is still in use under the name of the new, or Gregorian Calendar." The learned *Chief Justice,* after going into an interesting discussion as to man's fixing time, held that the 6 months meant lunar months of 28 days under the common law, and the action was barred. This decision has been changed by the statutory construction above set forth. *"Calendar year*—The calendar year is

composed of twelve months, varying in length according to the common or Gregorian Calendar. *In re Parker's Estate,* 14 Wkly., Notes Cas. (Pa.), 566." Black's Law Dic., p. 162. *"Calendar year.* Ordinarily and in common acceptation three hundred and sixty-five days, save leap year." 9 C. J., at p. 1118. *Muse v. Assurance Co.,* 108 N. C., p. 240. *"Fiscal year.* In the administration of a state or government, or of a corporation, the fiscal year is a period of twelve months (not necessarily concurrent with the calendar year), with reference to which its appropriations are made and expenditures authorized, and at the end of which its accounts are made up and the books balanced. See *Moose v. State,* 49 Ark., 499, 5 S. W., 885." Black, *supra,* p. 502.

Plaintiff contends .that the tax year for *ad valorem* taxes is the calendar year of 1926, beginning 1 January, 1926, and ending 31 December, 1926. The court below construed the language of the statutes and sections to the effect that the tax year began on 1 May, 1926, and ended 30 April, 1927. In this we think the court correct.

C. S., 7987, says the "lien shall attach on the first day of June annually." See, also, C. S., 2815. *Carstarphen v. Plymouth,* 186 N. C., p. 90.

The Revenue Act of 1925, which we are now construing, says "which lien shall attach *on the first day of May annually."*

Chapter 101 is entitled "An act to raise revenue." Section 1 is as follows: "The taxes hereinafter designated are payable in the existing national currency, and except as otherwise provided, shall be for the calendar year in which they become due. The lien of the State, county, and municipal taxes levied for any and all purposes in each year shall attach to all real estate of the taxpayer situated within the county or other municipality by which the tax list is placed in the sheriff's or tax collector's hands, *which lien shall attach on the first day of May, annually,* and shall continue until such taxes, with any penalty and costs which shall accrue thereon, shall be paid."

Chapter 102 is the "Machinery Act," and relates "to the assessment of property and other purposes." Article 3, section 44, is in part as follows: "Each township list-taker and assessor appointed under the authority of this act shall advertise in five or more public places within the township, not later than the twentieth day of April, notifying all taxpayers to return *to him all real and personal property which each taxpayer shall own on the first day of May,* and said return shall be made to the list-taker during the month of May under the pains and penalties imposed by law, and naming the times and places at which he will be present to receive tax lists."

The governing bodies of each city or town—section 59 (3)—in part is as follows: "who shall be known as tax assessor, and who *shall list*

*and assess all the real and personal property in such city or town* for the purposes of municipal taxation of said city or town, *and in like manner* as in this chapter provided for listing property by township or assistant assessors list the land in such city or town."

Section 78 in part is as follows: "The taxes (*ad valorem* and poll) shall be due the first Monday in October in each year."

Section 88 in part is as follows: "The sheriff or tax collector shall pay the county taxes to the county treasurer or other lawful officer. . . . On or before the first Monday of May in each year the sheriff shall account to the county treasurer or other lawful officer for all taxes due the county for the fiscal year."

Construing these statutes and sections *in pari materia*—with reference to each other—the just interpretation, the spirit and right, would clearly indicate that the intent of the Legislature was, (1) That the tax year, twelve months, 365 days, for taxes levied on property in the county of Buncombe and city of Asheville (and in the State), during 1926, began on 1 May, 1926, and ended on 30 April, 1927. (2) The lien shall attach on the first day of May, the time fixed for the taxpayer to list his property for the ensuing year. The fiscal year for taxes began 1 May, 1926, and ended 30 April, 1927, the time is 12 months (365 days), same as the time of a calendar year. (3) The tax, although a lien from 1 May, is not due until the first Monday in October.

The learned judge in the court below, having had long years of experience on the bench, so construed the acts and sections. We think there is no error, and the judgment of the court below is

Affirmed.