WACHOVIA BANK AND TRUST COMPANY, ADMINISTRATOR OF W. R. MANN, v. NASH COUNTY AND J. T. TAYLOR, TREASURER OF NASH COUNTY.

(Filed 6 March, 1929.)

**1. Taxation—Liability of Persons and Property—Property Exempt—State Bonds—Power to Exempt.**

A statutory exemption from taxation of bonds authorized by statute and issued by the State is a valid exercise of legislative authority.

**2. Same—Government Bonds.**

The United States Government may issue its nontaxable bonds in pursuance of its governmental functions, and on the principle that agencies

of the Federal Government are not subject to taxation by the State they are not subject to taxation, and it is not necessary that Congress in issuing such bonds secure this immunity by an express declaration to that effect, and this result is not in violation of the provision of the State Constitution requiring that all moneys, credits, investments in bonds be taxed by a uniform rule.

### 3. Same—Exchange of Securities to Avoid Taxation.

The statute which makes it a misdemeanor punishable by fine or imprisonment for "any person to evade the payment of taxes by surrendering or exchanging certificates of deposit in any bank of this State or elsewhere for nontaxpaying securities" does not apply to the purchase before the tax listing date of nontaxable United States or State bonds by funds subject to taxation, and thereafter selling the bonds and redepositing the amount, when the transaction is made in good faith and the bonds are bought and sold on the open market and the title thereto passes absolutely in both transactions, and the purchaser of the bonds may not be taxed on the purchase price.

### 4. Same.

The purchasing of nontaxable government bonds before the date for the listing of property for taxation, and the later selling of the bonds, does not withdraw the money used in the original purchase from taxation, since the purchase price is subject to taxation.

CLARKSON, J., concurring, STACY, C. J., concurring in concurring opinion.

APPEAL by defendants from *Barnhill, J.,* at October Special Term, 1928, of NASH. Affirmed.

Action to recover sums of money paid by plaintiff, under protest, upon demand of defendant, Nash County, in discharge of taxes illegally assessed by said defendant against plaintiff's intestate.

Upon plaintiff's motion for judgment on the pleadings, judgment was rendered as follows:

"This cause comes on for hearing at this the October, 1928, Special Term of the Superior Court of Nash County, with M. V. Barnhill, judge presiding, upon motion of plaintiff for judgment on the pleadings.

From the admissions in the pleadings and those made in open court by counsel for plaintiff and defendants, the court finds the following facts:

1. That on 27 April, 1925, plaintiff purchased, on the open market, $55,000 worth of United States Government Tax Exempt Bonds, paying for said bonds with a check against his account in the Planters National Bank of Rocky Mount.

2. That on 5 May, 1925, plaintiff sold said bonds, on the open market, and at a different price from that at which they were purchased, and deposited the proceeds of such sale to the credit of his account in the Planters National Bank of Rocky Mount.

45—196

3. That on 26 April, 1926, plaintiff purchased, on the open market, $39,500 worth of United States Government Tax Exempt Bonds, paying for said bonds with a check against his account in the Planters National Bank of Rocky Mount.

4. That on 8 May, 1926, plaintiff sold said bonds, on the open market, and at a different price from that at which they were purchased, and deposited the proceeds of such sale to the credit of his account in the Planters National Bank of Rocky Mount.

5. That both of these transactions were bona fide, plaintiff actually becoming the owner and in possession of said bonds and had them in his possession on 1 May, 1925, and 1 May, 1926, respectively. That the money representing the purchase prices of said bonds did not belong to nor was it in the possession of plaintiff on 1 May, 1925, and 1 May, 1926.

6. That plaintiff purchased said bonds in 1925 and 1926, for the purpose of escaping taxation on said $55,000 and said $39,500, respectively.

7. That the defendants demanded that plaintiff pay tax on said sums and, in compliance with said demand, plaintiff did, on 26 November, 1927, pay such tax, aggregating $2,543; but that said tax was paid under protest, in compliance with statute, and demand was duly made, in compliance with statute, that it be refunded. That this action was duly commenced to recover said sum.

The court being of the opinion that the above transactions do not constitute an exchange of certificates of deposit in a bank in this State for nontaxpaying securities, and do not constitute a surrender of taxable property for nontaxable property, which securities or nontaxable property was given up or surrendered after the date of listing property and said security or taxable property received back:

It is, therefore, ordered and adjudged that plaintiff recover of defendants the sum of $2,543, with interest thereon from 26 November, 1927, till paid, the costs of this action to be taxed by the clerk against the defendants."

Defendants excepted to the foregoing judgment and appealed therefrom to the Supreme Court.

*Spruill & Spruill* for plaintiff.
*J. P. Bunn* and *Cooley & Bone* for defendants.

CONNOR, J. Both the Government of the United States and the Government of the State of North Carolina have adopted the policy with reference to their financial operations which is generally pursued by other governments. When in need of money for governmental purposes,

which it is not deemed wise to undertake to raise by current taxation, they issue and sell their interest-bearing bonds. Purchasers and holders of these bonds rely for their security upon the good faith and unimpaired credit of the government whose bonds they buy and hold as investments. These bonds usually yield a less income than that derived from other investments of unquestioned security. They are usually, by express statutory provision, exempt from taxation in the hands of purchasers and holders. The difference in income from government bonds and from other investments of unquestioned security is measured to some extent by the amount of the tax or taxes levied or assessed by the government on investments other than these bonds. Investors are thereby induced to buy government bonds notwithstanding the fact that they bear interest at a less rate than other sound investments. These investors rely upon the integrity of the statutory provisions exempting such bonds from taxation. Good faith to purchasers and holders of such bonds demands that the integrity of these statutory provisions, when they are clearly expressed and free from doubt, shall not be impaired by administrative or judicial construction. The credit of governments issuing nontaxable bonds is enhanced by their free and unrestricted marketability. A policy which would restrict the marketability of nontaxable government bonds, after they have been sold and while they are in the hands of holders, would be in violation of good faith on the part of the government which has issued and sold said bonds and would necessarily tend to impair the credit of such government. Owners of property and of other investments which are by law subject to taxation would not be benefited by such a policy. It would result ultimately in an increase of their tax burden. They would be the chief sufferers from a policy which would be regarded as in violation of good faith and which would necessarily result in the impairment of the credit of their government.

It has been uniformly held by this Court that statutory provisions exempting bonds, issued and sold by the State of North Carolina under legislative authority, from taxation by the State or its taxing subdivisions, are valid, notwithstanding the provision in the Constitution which requires that all moneys, credits, investments in bonds, stocks, joint-stock companies or otherwise, shall be taxed by uniform rule. Holders of such bonds may avail themselves of such exemption. In *Pullen v. Corporation Commission*, 152 N. C., 548, 68 S. E., 155, it is said that the uniform and well-settled policy of this State, certainly since 1852, has been to exempt its own bonds and certificates of debts from taxation. The power of the General Assembly to declare that bonds issued by its authority shall be exempt from taxation by the State, has never been doubted or called in question. In the opinion written

for the Court, sustaining the validity of a statutory provision exempting certain bonds of the State from taxation, *Manning, J.,* said:

"The State and its taxpayers are not without compensating advantage for this exemption from taxation conferred upon the bonds issued by the State, because it is thereby enabled to sell its bonds, bearing interest at only four per cent, not only at their par value, but at a premium, and thus, if residents and citizens of the State—those liable to pay it tribute in taxes—own the bonds of the State, what the State and its taxing subdivisions, created by it, may lose in revenue by permitting the bonds to be taxed, is saved by the State and its taxpayers in having to pay a much reduced rate of interest on the bonds."

With respect to the liability of holders of bonds issued by the United States under the authority of Congress, to taxation on such bonds by a State, it is said to be well settled that bonds, treasury notes and other obligations of the United States are exempt from all taxation by or under State authority. Such bonds are means by which the United States performs its governmental functions and, on the principle that agencies of the Federal Government are not subject to taxation by a State, are exempt from State taxation. It is, therefore, not necessary for Congress to secure this immunity by a declaration in terms, as such declaration does not operate to withdraw from the States any power or right previously possessed by them. 26 R. C. L., p. 100, sec. 76.

It is not contended by the defendants in the instant case that plaintiff's intestate was liable for the taxes assessed against him by reason of his ownership on the first of May, 1925 and 1926, of the United States tax-exempt bonds, purchased by him in good faith, in the open market, prior to said dates. Defendants contend that he was liable for said taxes for that his transactions with reference to said bonds as found by the court, were in violation of a statute of this State and were a fraud upon the defendant, Nash County. Neither of these contentions can be sustained.

The statute relied upon by defendants is as follows: "Any person who, to evade the payment of taxes, surrenders or exchanges certificates of deposit in any bank in this State or elsewhere for nontaxpaying securities or surrenders any taxable property for nontaxable property, and, after the date of listing property has passed, takes said certificates or other taxable property back, and gives up said nontaxpaying securities or property, shall be guilty of a misdemeanor and upon conviction shall be fined not less than $50 nor more than $200 or imprisoned not less than one month nor more than six months, or both." Section 54, chapter 102, Public Laws 1925; section 53, chapter 71, Public Laws 1927.

TRUST COMPANY *v.* NASH COUNTY.

Upon the facts found by the judge of the Superior Court, to which there was no exception, the transactions of plaintiff's intestate with reference to the bonds was not a violation of the statute. They were in good faith and resulted in said intestate acquiring the title, both legal and equitable, to said bonds, which he held on the day fixed by statute for listing property subject to taxation. As he did not own on said day a deposit in the bank to his credit, he could not be held liable for the tax assessed against him by the defendant, Nash County. The statute does not undertake to make a transaction which by its provisions is a misdemeanor, void; on the contrary the validity of the transaction, in so far as it affects the title to property, both taxable and nontaxable, involved therein, is assumed. It is only when the purpose of the transaction, to wit, an evasion of taxation, is accomplished, that the transaction is made by statute a misdemeanor. The statute cannot be justly construed as attempting to make a transaction within its provisions void. The only penalty prescribed by the statute for its violation is a fine or imprisonment, or both.

Nor can it be held that the transactions of plaintiff's intestate with reference to said bonds were a fraud upon the defendant, Nash County. The county has lost no taxes to which it was entitled under the law as a result of said transactions. The mere change in ownership of the taxable and of the nontaxable property did not relieve the owner of the taxable property on the first day of May from liability for taxes; nor could it impose such liability upon the owner on said day of the nontaxable property. Plaintiff's intestate was not forbidden by statute or by any just principle of law from purchasing in good faith prior to the date on which he was required to list his property for taxes, nontaxable property and paying therefor by his check on a bank deposit which would have been liable to taxation had he owned the deposit on the tax-listing day, to wit, the first day of May, thereafter. We find no error in the judgment. It is

Affirmed.

CLARKSON, J., concurring: I concur in the result on the peculiar facts appearing of record and the language of the statute under which liability for tax is asserted. *S. v. R. R.*, 145 N. C., at p. 539 *et seq.; S. v. R. R.*, 168 N. C., 103; *Trust Co. v. Burke*, 189 N. C., 69; *Noland Co. v. Trustees*, 190 N. C., 250.

I am authorized to say that the *Chief Justice* concurs in the result upon the same grounds stated herein.