CARL V. REYNOLDS v. CITY OF ASHEVILLE, et al.

(Filed 2 July, 1930.)

**1. Taxation E b—Validity of assessment of tax may be tested by injunction.**

The legality of a tax assessed by a city may be tested in proceedings in injunction.

**2. Municipal Corporations K d—Where property is annexed by city after attachment of tax liens, city may not tax such property for fiscal year.**

The lien for taxation attaches annually to realty prior to the thirtieth of June under the general law in effect in 1929, and where the boundaries of a city are extended under an act providing that the date of the annexation be deferred until the thirtieth of June, 1929, the property so annexed is not within the city on the date that the lien for taxation attaches, and such property is not subject to an *ad valorem* tax levied by the city for the year of 1929.

CLARKSON, J., dissenting.

APPEAL by defendants from *Sink, Special Judge,* at April Term, 1930, of BUNCOMBE.

Civil action to restrain the collection of an alleged unlawful tax and to declare the lien, sought to be asserted against plaintiff's property, void.

There being no dispute as to the facts upon which the controversy depends, a jury trial was waived and the matter submitted to the court,

on the facts agreed, which, so far as essential to a proper understanding of the legal questions involved, may be abridged and stated as follows:

1. Chapter 205, Private Laws 1929, provides that, subject to an election to be held on 30 April, 1929, which was held and carried, the boundaries of the city of Asheville are to be extended so as to include additional territory, some incorporated and some not.

2. By the terms of said act, the date of annexation was deferred until 30 June following.

3. Prior to and at all times during the year 1929, the plaintiff owned real and personal property located in that part of the town of Biltmore Forest which was included within the new boundaries of the city of Asheville as set forth in the Extension Act above mentioned.

4. On 1 May, 1929, the plaintiff duly listed his property for taxation by the county of Buncombe and the town of Biltmore Forest, and has paid to the county and to the town of Biltmore Forest all the taxes levied and assessed against his property for the year 1929.

5. As soon as available, all tax lists of Buncombe County which relate to property and polls within the city of Asheville, are furnished to the city as its own tax lists.

6. On 8 October, 1929, the board of commissioners of the city of Asheville duly passed a tax ordinance, and endorsed the tax lists, prepared in conformity with said ordinance, so as to affect all property within the city, including that annexed under the Extension Act aforesaid.

The plaintiff contends that as his property was not within the corporate limits of the city of Asheville on 1 May, 1929, when the situs of taxable property was fixed by law for the ensuing tax year, and did not come within such limits until 30 June thereafter, the city was without power on 8 October, 1929, in the absence of special legislative authority, to levy a valid *ad valorem* tax on his property prior to the tax year 1930.

The plaintiff's position was upheld in the court below, and from a judgment enjoining the defendants from collecting the tax in question and declaring the same invalid, the defendants appeal.

*Alfred S. Barnard for plaintiff.*
*George Pennell, Charles Earl Jones and Charles N. Malone for defendants.*

STACY, C. J.: The appropriateness of the proceeding, to test by injunction the validity of the alleged illegal tax, is asserted in *R. R. v. Commissioners,* 188 N. C., 265, 124 S. E., 560.

There was some confusion in the law as it existed in 1929 as to whether the lien of State, county and municipal taxes attached annually

on the first day of May, the date of listing, or on the first day of June. C. S., 2815 and 7987; *Chemical Co. v. Brock,* 198 N. C., 342; *Shaffner v. Lipinsky,* 194 N. C., 1, 138 S. E., 418; *Carstarphen v. Plymouth,* 186 N. C., 90, 118 S. E., 905. But however this may have been, it certainly attached annually under the general law, as then written, prior to 30 June, and we find nothing in the local statutes to take the present case out of the general class. Hence, it would seem that as plaintiff's property was not within the corporate limits of the city of Asheville on 1 May or 1 June, 1929, it was not subject to an *ad valorem* tax levied by said municipality for the fiscal year 1929. *Shaffner v. Lipinsky, supra.*

The decision in *Harrington v. Comrs.,* 189 N. C., 572, 127 S. E., 577, strongly relied upon by the defendants, is not at variance with this position, for the *Harrington case* was controlled by other statutes and other laws.

It appears that at least six courts have considered similar questions, arising under slightly different laws and different fact situations, two upholding such taxes *(Johnston v. Huntington,* 71 W. Va., 106, 76 S. E., 142; *City of Westport v. McGhee,* 28 Mo., 152, 30 S. W., 523), and four deciding against their validity *(Detroit Trust Co. v. Detroit,* 248 Mich., 612, 227 N. W., 715; *City of Gulfport v. Todd,* 92 Miss., 428, 46 So., 541; *Chattanooga v. Raulston,* 117 Tenn., 569, 97 S. E., 456; *Austin v. Butler,* 40 S. W. (Tex. Civ. App), 340).

The rationale of our own decisions would seem to point in the direction of the majority. *Wachovia Bank & Trust Co. v. Nash County,* 196 N. C., 704, 146 S. E., 861. Had the plaintiff been a nonresident of the State prior to 1 May, 1929, and on 30 June thereafter moved to Asheville, bringing property with him, the State would not have taxed the property, thus initially brought within its borders, for the year 1929, and it is not to be supposed, in the absence of specific legislative authority, that a municipality may do what the State itself does not do. *City of Gulfport v. Todd, supra.*

The Legislature, of course, may confer power on a municipality to fix its tax year at dates different from those fixed by the general law, but that is not the question here presented. *Chattanooga v. Raulston, supra.* We are construing the pertinent local and general statutes as they were written in 1929. The correct judgment was entered in the court below.

Affirmed.

CLARKSON, J., dissenting: The question involved in this appeal: Did chapter 205, Private Laws of 1929, entitled "An act to Extend the Corporate Limits of the City of Asheville," ratified 18 March, 1929,

authorize the city of Asheville, after the approval of city extension by the voters in said city and annexed territory, on 30 April, 1929, to pass an *ad valorem* tax ordinance for its fiscal year beginning 1 September, 1929, on taxable property situated 1 May, 1929, in territory annexed to the city of Asheville? I think so.

Under section 3 of the act it was mandatory that the election be held on Tuesday, 30 April, 1929, and the act went into effect from and after its ratification 18 March, 1929. The election was held in accordance with the act and a majority of votes cast was "For City Extension" and "Greater Asheville" was born.

Part of section 5, is as follows: "If at such election a majority of the votes cast shall be 'For City Extension,' then, from and after the thirtieth day of June, one thousand nine hundred and twenty-nine, the corporate limits of the said city of Asheville shall be extended as herein provided, and the territory described above shall be a part of the corporate territory of the city of Asheville, and such territory, its citizens and property, shall be subject to the charter and all laws, ordinances and regulations in force in said city."

Section 7, in part: "That if the corporate limits of the city of Asheville are extended as herein provided, the city of Asheville shall assume all the valid and subsisting outstanding bonded indebtedness and other liabilities incurred for necessary expenses of the incorporated towns of Kenilworth, Biltmore, South Biltmore, and the city of Asheville shall succeed to all the assets, revenues, taxes, assessments, real and personal properties of said municipal corporations," etc.

Section 8, in part: "That if the corporate limits of the city of Asheville shall be extended by said election as hereinbefore provided, then the city of Asheville shall assume all of the bonded debt of the Woolsey Sanitary Sewer District," etc.

Section 10, in part: "That if the corporate limits of the city of Asheville shall be extended by said election as herein provided, then it shall be the duty of the city of Asheville after the date of said election and before the thirtieth day of June, one thousand nine hundred and twenty-nine, to surrender the control of the present city of Asheville Special Charter School District and shall surrender the same to the board of education of Buncombe County," etc.

The plaintiff contends: That section 5 of the Greater Asheville Act extended the Asheville city limits so as to include his property only from and after 30 June, 1929, and consequently, since his property was not within the corporate limits of Greater Asheville on 1 May, 1929, the day after the election established city extension, the taxable situs of his property was within the town of Biltmore Forest and not in Greater Asheville, although the Greater Asheville boundary is described by

course and distance in section 1 of Greater Asheville Act, so as to include both old Asheville and all annexed territory, including that portion of the town of Biltmore Forest in which plaintiff's property was located on 30 April, 1929. Plaintiff furthermore contends that the relation of debtor and creditor between him and the town of Biltmore Forest was fixed by the taxable situs of his property on 1 May, 1929, and that it could not thereafter be changed by the Greater Asheville Act which included his property within the city of Asheville on 1 July, 1929. Plaintiff also contends that the taxable situs of his property was in the town of Biltmore Forest on 1 June, 1929, the date fixed by law when the tax lien attaches, and that unless his property was within the city of Asheville on 1 June, 1929, which he denies, the city of Asheville could not by its ordinance passed 8 October, 1929, levying an *ad valorem* tax on plaintiff's property fasten a tax lien upon it as of 1 June, 1929.

The defendant contends: That on 30 April, 1929, the only condition prefixed to the annexation of territory under the Greater Asheville Act was removed by an election at which a majority of the voters voted "For City Extension" and that *eo instanti* this condition was removed, the provisions of the Greater Asheville Act became effective. Section 5 of Greater Asheville Act and the provisions therein which extends the corporate limits of the city of Asheville from and after 30 June, 1929, contemplates that the administration of annexed territory for municipal purposes by the city of Asheville was set to begin on 1 July, 1929, and that on 30 June, 1929, the administration of such territory by the town of Biltmore Forest, the towns of Kenilworth, Biltmore and South Biltmore and by the Sanitary District of Woolsey and the other water and sewer districts should terminate. This provision relates exclusively to a transfer of municipal administration from the former towns and districts to the city of Asheville and it fixes a date when that transfer shall be accomplished.

By section 7 the language is clear that on 30 April, when Greater Asheville was born, it had to assume all the indebtedness of the town taken in and the city of Asheville *"shall succeed to all the assets, revenues, taxes, assessments, real and personal properties of said municipal corporations,"* not from 1 July, 1929, as contended for by plaintiff but from the date of 30 April, 1929, when by vote the territory became Greater Asheville.

Nothing is said in section 5, as to assets, revenues, taxes, assessments, etc., but it says in regard to the corporate limits of Greater Asheville, *"such territory its citizens and property, shall be subject to the charter and all laws, ordinances and regulations in force in said city,"* and this shall be from 1 July, 1929. The two sections are reconcilable. Section 5, relates to the police administration of Greater Asheville and the

transfer of municipal administration of these former towns and districts into Greater Asheville, and until 1 July, 1929, is given to take over this burden. Section 7 says in plain words when the corporate limits are extended, as herein provided, that is, when the vote was taken 30 April, Greater Asheville shall assume all the burdens of these towns, etc., and so instantly as the burdens are assumed by Greater Asheville, the benefits are given to Greater Asheville "shall succeed to all *the assets, revenues, taxes, assessments, real and personal property of said municipal corporation."*

It was never intended by the act, and there is no language that so says, that the tax period shall begin 1 July, 1929, but, on the contrary, the reasonable construction is that the tax period shall begin from 30 April, 1929, and the Greater Asheville *shall succeed to all the assets, revenues, taxes,* etc.

The position here taken is consonant with reason and justice. Construing the intent of the General Assembly, it would hardly be supposed that the General Assembly would entail on *old Asheville* $700,000 of extra taxes and assume the burdens of the new territory Greater Asheville, and relieve the new territory from taxes at the same time the new territory gets its indebtedness assumed and interest paid on bonds, fire and police protection, sanitary service, water, lights and other conveniences furnished by *old Asheville.*

The different sections of the act are reconcilable, and it is an unreasonable construction that would put such a burden on old Asheville. Plaintiff's property, as before shown, was in Greater Asheville on 1 May, 1929, when the situs of taxable property was fixed by law for the ensuing year. Plaintiff's property was on 1 May, 1929, in Greater Asheville, his property was subject to tax from that date. His property is receiving the benefits and should bear the burden of taxation.